Annie E. Wilson, as Administratrix with the Will Annexed of Henry Wilson, Deceased, Appellant, v. The Mechanical Orguinette Company, Respondent.

1. Contract — Patent — When Licensee Thereof Liable for Royalties After Transfer of License. The owner of patents who has granted an exclusive license to manufacture and sell under them during the term of the patent having the longest time to run, under an agreement providing that the licensee should pay him at the end of prescribed times during the term a certain royalty on all articles sold by it, whether manufactured under the patents or not, and reserving in certain contingencies the right to sell on his own account, and also providing that the licensee might manufacture or procure to be manufactured, by such manufacturers as it might appoint for that purpose from time to time, all such instruments as it was licensed to sell, is not deprived of his right to royalties during the term of the license by the fact that the licensee transfers it and the rights thereunder to a corporation formed by the consolidation of itself and another corporation, and thereupon ceases to do business, since, notwithstanding the transfer, it is bound to do that which it might have done and could have been compelled to do if it had continued its business, and when its successor continues the manufacture and sale of the articles, it must be deemed to have done so by the authority and procurement of the licensee, and the latter is liable for the royalties to the same extent that it would have been had it continued in business.

2. Practice — Severance of Single Cause of Action — Acquiescence Therein by Parties — Appeal from Judgment Entered Thereunder. Where the trial court severs a single cause of action by directing a verdict for part of the amount claimed, and dismisses the complaint as to the rest, and neither party appeals from that part of the judgment directing the verdict for plaintiff, and the latter appeals from so much of the judgment as dismisses the complaint in part, both parties must be deemed to have acquiesced in the practice of the trial court, although erroneous, and that portion of the judgment appealed from is, to all intents' and purposes, a distinct and separate judgment, an appeal from which the plaintiff has the right to take and the appellate courts the power to hear and decide.

*Wilson* v. *Mechanical Orguinette Co.*, 57 App. Div. 158, reversed.

(Argued March 5, 1902; decided April 8, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 4, 1901, affirming a judgment entered upon a ver-

dict directed by the court in favor of plaintiff for a part of the amount claimed, and dismissing the complaint as to the remainder.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Herbert T. Ketcham* and *Joseph E. Owens* for appellant. It was the plain right of the plaintiff to present to the jury the question whether or not the transfer by the defendant to the Æolian Company was a merely colorable device to cover an intent by which the defendant might, through another, actually sell the goods upon which it was bound to pay tribute to Wilson, and might by the same means escape the duties of its covenant. (*Lee* v. *Adsit,* 37 N. Y. 78; *L. Mfg. Co.* v. *S. G. Ins. Co.,* 88 N. Y. 591; *McMaster* v. *Ins. Co.,* 55 N. Y. 222; *Hankinson* v. *Vantine,* 152 N. Y. 30; *Folinsbee* v. *Sawyer,* 157 N. Y. 196; *Town of New Berlin* v. *Town of Norwich,* 10 Johns. 229; *Barreda* v. *Silsbee,* 21 How. [U. S.] 146; *Montrose* v. *Wannamaker,* 21 Abb. [N. C.] 478; *King* v. *O'Brien,* 1 J. & S. 49; *McK. P. Co.* v. *F. I. Co.,* 16 J. & S. 442; *M. W. Co.* v. *Deinelt,* 133 Penn. St. 585.) The license by Wilson to the defendant was non-assignable. (*Putnam* v. *Hollender,* 6 Fed. Rep. 882; *Gibbs* v. *Hoefner,* 19 Fed. Rep. 323; *T. I., etc., Factory* v. *Corning,* 14 How. [U. S.] 193; *Lock* v. *Lane, etc., Co.,* 35 Fed. Rep. 289; *Oliver* v. *R. C. Works,* 109 U. S. 75; *Hapgood* v. *Hewitt,* 119 U. S. 226; *Marsh* v. *Dodge,* 66 N. Y. 533; 4 Hun, 278; *Sizer* v. *Ray,* 87 N. Y. 220; *Belding* v. *Turner,* 4 Fish. Pat. Cas. 446; *Emigh* v. *Chamberlain,* 2 Fish. Pat. Cas. 192; 1 Biss. 367.) The holder of a non-assignable license is liable for the prescribed royalty thereon if he in any manner arranges for or suffers the exercise of the privilege by another. (*Marsh* v. *Dodge,* 66 N. Y. 533; 4 Hun, 278; *Wilde* v. *Smith,* 8 Daly, 196; *Sizer* v. *Ray,* 87 N. Y. 220.) The defendant's liability for the use by its grantee of its license privilege is not affected by the incident that other persons became concerned in such use. (*Lightner* v. *B. & A. R. R. Co.,* 1 Lowell, 338; *Sizer*

v. *Ray*, 87 N. Y. 220.) It may well be, and has been recognized, that at the instance of a stranger a contract may be found to be a fraudulent evasion of his rights, even though some of the parties thereto acted in good faith, and the contract be sustained *inter partes*. (*Barreda* v. *Silsbee*, 21 How. [U. S.] 146.)

*William B. Hornblower, William L. Perkins* and *Frank A. Butler* for respondent. The plaintiff must recover *secundum allegata et probata*, if at all. (*Arnold* v. *Angell*, 62 N. Y. 508; *Neudecker* v. *Kohlberg*, 81 N. Y. 296; *Degraw* v. *Elmore*, 50 N. Y. 1; *Ross* v. *Mather*, 51 N. Y. 108; *Walter* v. *Bennett*, 16 N. Y. 250; *Gould* v. *C. C. Nat. Bank*, 86 N. Y. 75; *Jugla* v. *Trouttet*, 120 N. Y. 21.) The terms and language of the contract are clear; it contains no obscure technical terms and no latent ambiguities, rendering the subject-matter doubtful; therefore the interpretation of its meaning belongs to the court alone. (*Brady* v. *Cassidy*, 104 N. Y. 147, 155; *Dwight* v. *G. Ins. Co.*, 103 N. Y. 350; *Jerome* v. *Q. C. C. Co.*, 163 N. Y. 351, 357; *Glacius* v. *Black*, 57 N. Y. 567.) The learned trial justice construed the contract correctly, limiting plaintiff's recovery under the proof and the contract to sales actually made by the defendant. (*Jugla* v. *Trouttet*, 120 N. Y. 21; *Newell* v. *Wheeler*, 36 N. Y. 244; *Bruce* v. *F. Nat. Bank*, 79 N. Y. 154; *Zorkowski* v. *Astor*, 156 N. Y. 398; *H. C. Co.* v. *P. C. Co.*, 75 U. S. 276; *Goldmark* v. *M. M. Co.*, 44 App. Div. 35; *Gray* v. *N. S. S. Co.*, 115 U. S. 116; *Hapgood* v. *Hewitt*, 119 U. S. 226; *Fernschild* v. *Y. B. Co.*, 5 App. Div. 29; *Carnaghan* v. *E. & P. O. Co.*, 32 N. Y. S. R. 1117.) No question of fact for the jury was presented. (*H. & G. M. Co.* v. *H. & W. M. Co.*, 127 N. Y. 258; *Gray* v. *N. S. S. Co.*, 115 U. S. 116.) If there must be a reversal and a new trial, the entire judgment should be reversed and the whole cause of action tried anew. (*Goodsell* v. *W. U. Tel. Co.*, 109 N. Y. 147; *Wolstenholme* v. *W. F. Mfg. Co.*, 64 N. Y. 272; *Nat. Bd. of M. U.* v. *Nat. Bank of R.*, 146 N. Y. 64.)

WERNER, J.   This action was brought to recover certain royalties upon patents applicable to mechanical musical instruments, under an agreement between the defendant and one Henry Wilson, the plaintiff's testator, made in October, 1882. There were no disputed facts.   Two questions are presented for our consideration : 1. Did the trial court err in not submitting to the jury that part of plaintiff's cause of action as to which the complaint was dismissed?   2. If the trial court erred in this regard can there be a reversal simply as to that part of the judgment, or must the whole judgment be reversed?   A short recital of the salient facts of the case will suffice to point out the decision which must be reached upon one of these questions; and the practice at the trial adopted by the court and acquiesced in by both parties definitely disposes of the other.

In 1882 Henry Wilson, the plaintiff's testator, was the owner of about forty patents applicable to mechanical musical instruments, and the defendant was the owner of two patents of the same class, the latter being then in litigation. For the purpose of obtaining the undisputed right to use all of the patents owned by both parties, and of settling the litigations then pending, a tripartite agreement was entered into on the 30th day of October, 1882, between the defendant as party of the first part, said Wilson as party of the second part, and James Morgan, individually and as executor, and John Nichol of the third part, by the terms of which the defendant assigned to said Wilson its two patents above referred to.   Wilson in turn granted to the defendant an exclusive license to sell mechanical musical instruments embodying the inventions described in all or any of the patents above referred to, except in Great Britain, Ireland, the Channel Islands, France and Germany, " with permission to the said party of the first part (the defendant) to manufacture for its own business, or procure to be manufactured therefor, by such manufacturers in the United States as it may specifically for that purpose from time to time appoint, all such instruments as it is hereby licensed to sell."   This license was to continue

during the term of the patent which had the longest term to run, subject to the following conditions : 1. That during the term mentioned the defendant at the end of every three months should pay to said Wilson, as a royalty, three per cent upon the gross wholesale price of all mechanical musical instruments, or parts thereof, spools and music paper sold by it, whether embodying the inventions described in the above-mentioned patents or not. 2. That during such time the party of the first part (the defendant) should keep accurate accounts of the sales made by it and render the same when required by the said Wilson. 3. That in case the royalties should not be paid at the end of any three months, and within ninety days thereafter the agreement should be void at the option of said Wilson, his executors, administrators or assigns, if at the expiration of that time he should serve written notice to that effect upon the defendant and the royalties were not paid within ninety days from the service of such notice. 4. In case of default in the payment of royalties when they became due and the default should continue for ninety days thereafter, said Wilson, at the expiration of said ninety days, should have the right to sell without notice all instruments covered by said patents. 5. In case the royalties provided for should at any time not amount to the sum of $200 per month said Wilson should be at liberty to engage in the sale of such instruments. Said agreement further provided that in case it should be terminated the defendant would have the right to manufacture and sell any of the improvements embodied in the letters patent transferred by it to said Wilson, and, in that event, the latter should grant to the former an assignable license to make, use and sell under such patents, which license was to be exclusive except as to said Wilson who was to hold and own said patents.

It is conceded that the term of the patent which had the longest time to run did not expire until February 5th, 1901. So far as appears, the terms of said agreement were observed by both parties until 1887, when the defendant refused to pay further royalties thereunder. The record discloses that in

July, 1887, there was a so-called consolidation of the defendant with another corporation known as the Automatic Music Paper Company of Boston, Mass. To effect this consolidation a new corporation was formed under the laws of Connecticut called the Æolian Organ & Music Company, which name was subsequently changed to the Æolian Company, with a capital stock of $150,000. The defendant and the said Automatic Music Paper Company each had a capital stock of $60,000. It was agreed that the defendant should convey to the said Æolian Company all its property and assets in exchange for $60,000 of the capital stock of the new company, to be issued to the stockholders of the defendant in the same proportions in which they held the stock of the defendant. The Automatic Music Paper Company was to receive for its property, assets and business, $60,000 of the capital stock of the new company, to be divided among its stockholders in the same way, and $20,000 in cash, which was to be realized from sales of stock of the new company.

Pursuant to this arrangement a bill of sale was made by the defendant, through its president and treasurer, to William B. Tremaine, its then general manager, of all its stock in trade, assets and property as more particularly inventoried and enumerated upon a schedule thereto annexed, together with "the patent properties which are held by the party of the first part subject to payment of royalties, being conveyed subject to such royalties which the party of the second part hereby assumes and agrees to pay." On the day following the execution of this bill of sale, said Tremaine assigned a two-thirds interest therein to James Morgan and John Nichol, the president and treasurer respectively of the defendant. On the same day the said Tremaine, Morgan and Nichol assigned their interest in said bill of sale, and the property therein described, to the Æolian Organ & Music Company. In neither of said assignments of said bill of sale, and the property therein described, was there any express assumption of the defendant's obligation to pay royalties under the agreement above referred to. Substantially all of the officers of the defendant

were elected to the same offices in the new company. The latter took possession of the salesrooms and offices of the defendant, of the goods on hand, kept the same employees and, to all outward appearances, continued the business which had previously been carried on by the defendant without material change. Evidence was given upon the trial which tended to show that the Æolian Company, from the time of its formation in July, 1887, down to October 30th, 1898, sold mechanical musical instruments, spools and music paper of the kinds upon which the defendant contracted to pay royalties, and upon which the royalties amounted to more than $70,000.

This action was commenced on January 9th, 1899. The complaint sets forth the agreement above referred to and alleges that the defendant is indebted to the plaintiff, as administratrix, etc., of said Wilson, in the sum of $83,400 for royalties upon mechanical musical instruments sold under said agreement between October 30th, 1882, and October 30th, 1898. The answer is in effect a general denial, supplemented by affirmative allegations of payment and rescission of the contract. Upon these pleadings, and at the conclusion of the evidence, the trial court directed the jury to return a verdict in favor of the plaintiff for $12,000, that being the sum which the plaintiff was concededly entitled to recover for royalties which had accrued prior to July 25th, 1887, the date of the sale to the Æolian Company, and which with interest amounted to $24,038.33. The court then dismissed the plaintiff's complaint so far as it related to claims for royalties accruing after the last-mentioned date.

The defendant concedes the plaintiff's right to recover the sum for which a verdict was directed, and no appeal was taken by either party from that part of the judgment which is based upon this verdict. The plaintiff alone appealed to the Appellate Division and only from so much of the judgment as dismissed her complaint. From the judgment of affirmance by the Appellate Division the plaintiff appeals to this court. The learned counsel for the appellant contends that it was

error to take any part of this case from the jury. He argues that the facts established would have warranted the conclusion that the defendant never in fact discontinued the manufacture and sale of the instruments and appliances upon which royalties were payable by it; that the defendant, although nominally dissolved and out of business, in fact continued to manufacture and sell through the medium of the Æolian Company as its selling agent, and that this was a mere subterfuge to escape the payment of royalties. We deem it unnecessary to discuss that phase of the case. We think the trial court erred in not directing a verdict for the plaintiff upon the whole issue, and this conclusion is based upon the express terms and necessary implications of the agreement between the parties. By the terms of the agreement the payment of royalties was to continue during the life of the patent having the longest time to run. This was until February 5th, 1901. While it is true that the vicissitudes of business might have compelled the termination of the contract before its expiration by limitation, it is obvious that no such contingency ever arose. If defendant's sales of the patented instruments and appliances upon which royalties were to be paid had decreased to such an extent as to render the continuance of the business unprofitable, plaintiff's testator could have availed himself of the right reserved in the agreement to manufacture and sell on his own account, and that would have been his only remedy. So, on the other hand, the very purpose and spirit of the contract deprived the defendant of the right to arbitrarily annul the contract or to evade the payment of royalties by any change in its methods of manufacture and sale of the instruments and appliances described in the contract. Both parties assumed the hazard of an enterprise that might prove unprofitable, but neither of them incurred the risk of having the other voluntarily incapacitated from the honest observance of their mutual compact. When the Æolian Company was formed and absorbed the defendant, the latter was doing a profitable business, which was not to be discontinued, but was to go on

under changed conditions voluntarily created by it, and without the consent of plaintiff's testator. Defendant's acts, so far as they were calculated or intended to deprive plaintiff's testator of his right to royalties, were clearly subversive of the letter and spirit of the contract. If this contract were barren of express stipulations to support the plaintiff's claim to royalties, after the defendant's nominal discontinuance of the manufacture and sale of musical instruments and appliances, in 1887, the plaintiff would still be entitled to recover under the conditions disclosed by this record. The contract is of such a nature that the defendant assumed the implied duty of doing nothing that would render it incapable of performing its part thereof. By necessary implication, from the language and subject-matter of the contract, the defendant is still bound to do that which it might have done, and could have been compelled to do, if it had continued its business after 1887, as it did before that. When the defendant transferred its property, assets and business to the Æolian Company it was with full knowledge that the latter was to continue the business of the former and that this arrangement would necessarily involve the manufacture and sale of some or all of the patented instruments and appliances which were the subject of the contract between the defendant and plaintiff's testator. Could such a contingency as arose in 1887 have been foreseen in 1882 it is fair to assume that it would have been made the subject of express stipulation. If, therefore, we assume that the contract contains no express provisions for the continuance of royalties after 1887 it seems clear that, under the circumstances disclosed by the record, the case falls within the rule so aptly stated in *Genet* v. *D. & H. Canal Co.* (136 N. Y. 593–608). In speaking of implied promises Judge FINCH there said : " They always exist where equity and justice require the party to. do or to refrain from doing the thing in question ; where the covenant on one side involves some corresponding obligation on the other ; where, by the relations of the parties and the subject-matter of the contract, a duty is owing by one not expressly bound by the con-

tract to the other party in reference to the subject of it. In this court we have thrown some safeguards about the doctrine to secure its prudent application and have said that a promise can be implied only where we may rightfully assume that it would have been made if attention had been drawn to it (*Dermott* v. *The State*, 99 N. Y. 101), and that it is to be raised only to enforce a manifest equity or to reach a result which the unequivocal acts of the parties indicate that they intended to effect." (*King* v. *Leighton*, 100 N. Y. 386.)

The contract before us is not assignable. This fact is not only conceded by the defendant, but urged in defense of its attempt to avoid its just contract obligations. The plea has, however, no proper place in this controversy, (1) because the defendant did not assign its rights under the contract to the Æolian Company, and (2) if such an assignment had been made or attempted the defendant would not be heard to interpose its own wrongful act as a defense to plaintiff's claim.

But there is another view of this case in which the defendant can and should be held liable to pay royalties after July, 1887, under the terms of the written contract. It provides that the defendant may " manufacture for its own business, or procure to be manufactured therefor, by such manufacturers in the United States as it may specifically for that purpose from time to time appoint, all such instruments as it is hereby licensed to sell." The arrangement between the defendant and the Automatic Music Paper Company was in form a consolidation under which the active existence of each was to be merged in that of the Æolian Company. But this did not dissolve the defendant corporation, and for aught that appears in this record it is still a legal corporate entity, possessed of all the corporate powers which it had when it made the contract with the plaintiff's testator. For the purposes of this contract it still continues to exist. The circumstances under which it entered into the arrangement to transfer to the Æolian Company all of its property, assets and business, compel the conviction that the use by the latter company of the license owned by the defendant was absolutely essential to the con-

tinuance of the business, and that was the purpose for which the Æolian Company was organized. Such an important feature of the transaction could not have been left to chance or speculation. The evidence shows that the Æolian Company continued the manufacture and sale of the patented articles which the defendant had been licensed to make and sell. Candor and reason alike, therefore, require us to assume that the Æolian Company continued such manufacture and sale by and under the express direction and sanction of the defendant. As between the plaintiff and the defendant the legal effect of this arrangement is, that the manufacture and sale by the Æolian Company of such musical instruments and appliances as are described in the license contract between the plaintiff's testator and the defendant, must be deemed a manufacture and sale by the authority and procurement of the defendant. (*Marsh* v. *Dodge*, 66 N. Y. 538.) The conclusion necessarily follows that the trial court erred in dismissing the complaint as to any part of plaintiff's cause of action, and that a verdict should have been directed in favor of the plaintiff for such royalties as became due during the whole of the period from 1882 to 1898.

It is further urged on behalf of the respondent that there cannot be a reversal of the judgment dismissing the complaint without also reversing the judgment recovered by the plaintiff; that if a new trial is to be granted it must be as to the entire cause of action. In support of this contention counsel for the respondent cites the cases of *Goodsell* v. *Western Union Tel. Co.* (109 N. Y. 147); *Wolstenholme* v. *Wolstenholme File Mfg. Co.* (64 id. 272), and *Nat. Board of Marine Underwriters* v. *Nat. Bank of Republic* (146 id. 64). The rule laid down by those cases is that, upon appeal from a single judgment, either against one or more defendants, the appellate court must wholly affirm or reverse both as to the recovery and as to all the parties. The reason of the rule is obvious. It is to prevent one part of an entire judgment from being sent back for trial while another part is taken to the appellate court. Such procedure would result in having several parts of a single

judgment in different courts at the same time, and would produce endless confusion and embarrassment in the administration of justice. (*Nat. Bd. of Marine Underwriters* v. *Nat. Bank of Republic, supra,* p. 67; *Altman* v. *Hofeller,* 152 N. Y. 498–507.) But neither the rule adverted to nor the authorities cited have any application to the case at bar. While the plaintiff's complaint presents but a single cause of action it relates to two distinct periods; the first to such royalties as the defendant is concededly liable to pay up to July, 1887, and the second to such royalties as are disputed and accrued after that date. Upon the trial the court, in effect, severed the plaintiff's single cause of action by directing a verdict in favor of the plaintiff for the royalties, as to which there was no dispute, and dismissing the plaintiff's complaint as to the rest. While the court had no right to do this, its action as to the judgment in plaintiff's favor was acquiesced in by both parties, and the plaintiff alone objected to the partial dismissal of the complaint. Neither party has appealed from that part of the judgment in favor of the plaintiff. It is, therefore, not before the court for review, and we have no power to disturb it. (*Kelsey* v. *Western,* 2 N. Y. 502; *Robertson* v. *Bullions,* 11 id. 243; *Murphy* v. *Spaulding,* 46 N. Y. 556; *Matter of Davis,* 149 N. Y. 539.) A different situation is presented by that part of the judgment dismissing the plaintiff's complaint. Both parties having acquiesced in the practice adopted by the trial court, in severing a single cause of action into two parts, that portion of the judgment appealed from is, to all intents and purposes, a distinct and separate judgment, an appeal from which the plaintiff had the right to take and the appellate courts the power to hear and decide.

It follows, therefore, that the portion of the judgment appealed from must be reversed and a new trial granted as to that part only, with costs to abide the event.

O'Brien, Martin, Vann, Cullen, JJ. (and Parker, Ch. J., and Gray, J., in result), concur.

Judgment accordingly.