AMERICAN LOCOMOTIVE CO. v. HARRIS.

(Circuit Court of Appeals, First Circuit. December 7, 1916. On Petition for Rehearing, January 12, 1917.)

No. 1194.

1. APPEAL AND ERROR ☜853—INSTRUCTIONS—EXCEPTIONS—NECESSITY.
   An instruction not excepted to stands as the law of the case.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1524, 3405; Dec. Dig. ☜853.]

2. BROKERS ☜86(3)—COMMISSIONS—RIGHT TO.
   In assumpsit for commissions claimed under a contract for the sale of auto trucks, evidence *held* insufficient to show that plaintiff had completely consummated the contract, so as to be entitled to commission as such, although warranting a finding that, but for defendant's improper interference, he would have effected the sale.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 117; Dec. Dig. ☜86(3).]

3. BROKERS ☜79—COMMISSIONS—RIGHT TO.
   Defendant, a manufacturer of motor cars, desiring to go out of business, contracted with plaintiff for the disposal of its cars at reduced prices. Plaintiff began negotiations with third persons for the sale of a number of motor trucks, which sale would have been consummated, but for the interference of defendant, who disposed of the cars directly to the customer. Plaintiff brought assumpsit to recover compensation claimed, the case being finally submitted on the common counts. *Held* that, as the contract was not completed, plaintiff could not on the common counts recover commissions as a debt, recovery in that manner being allowable only when the contract is at an end, and nothing remains but the payment of the sum due; and hence, being restricted to recovery of damages by specially declaring on the contract, an instruction allowing plaintiff to recover the commissions provided in the contract was erroneous.

   [Ed. Note.—For other cases, see Brokers, Dec. Dig. ☜79.]

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. APPEAL AND ERROR ☞1064(1)—PREJUDICIAL ERROR—INSTRUCTIONS.

In such case, if an instruction, which became the law of the case, because not excepted to, could be interpreted as authorizing recovery for plaintiff, if he had carried on negotiations to a point where a sale would have been effected, but for defendant's interference, an instruction allowing plaintiff to recover the commissions provided in the contract amounted to reversible error, because it could not be determined whether the jury based their verdict on the instruction not excepted to, or the one allowing recovery as damages of the commissions provided in the contract.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4219; Dec. Dig. ☞1064(1); Trial, Cent. Dig. §§ 525, 553.]

5. BROKERS ☞7—CONTRACTS—CONSTRUCTION.

In such case, though defendant reserved the right to make sales to customers in the territory given to the sales agent, it impliedly obligated itself not to interfere with the agent's pending negotiations.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 5–8; Dec. Dig. ☞7.]

On Petition for Rehearing.

6. APPEAL AND ERROR ☞888(2)—AMENDMENTS—ALLOWANCE.

In such case the agent should not be allowed to file on appeal as an amendment a declaration in special assumpsit, and have the judgment affirmed, for it could not be determined that the jury's verdict was based on the count in quantum meruit, and not the one of indebitatus assumpsit; the instructions allowing recovery on such count.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3619; Dec. Dig. ☞888(2).]

7. APPEAL AND ERROR ☞1178(6)—REMAND—LIMITATION OF REMAND.

Where it did not appear that the jury might not have found for plaintiff on an incorrect theory of liability, the new trial, after reversal on appeal, should not be limited to the question of damages.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4614, 4615; Dec. Dig. ☞1178(6).]

In Error to the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Action by William A. Harris against the American Locomotive Company. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

Francis B. Keeney, of Providence, R. I. (Frank H. Swan and Swan & Keeney, all of Providence, R. I., on the brief), for plaintiff in error.

Arthur M. Allen, of Providence, R. I. (Abbott Phillips, Rush Sturges, and Green, Hinckley & Allen, all of Providence, R. I., on the brief), for defendant in error.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

BINGHAM, Circuit Judge. This is an action of assumpsit, brought by William A. Harris, of Providence, against the American Locomotive Company, a corporation organized under the laws of the state

of New York, to recover compensation claimed to be due him under a contract in procuring the sale of a number of auto trucks.

The declaration, as originally drawn, contained various counts, but the case was finally submitted to the jury only upon the common counts; the right to go to the jury on the others having been denied for failure of proof.

The defendant was a manufacturer of automobiles and auto trucks, but, having concluded to go out of the automobile business, and desiring to close out the balance of its trucks and pleasure cars, on August 21, 1913, it revised its schedule of prices, with a view of accomplishing this purpose without delay, and, on August 26, 1913, entered into a contract with the plaintiff to act as its agent at Providence, R. I., in the disposal of these cars.

The claim in controversy arises out of the sale of 27 trucks to Messrs. Norton and Draper, on which sale the plaintiff claimed the right to a commission in the sum of $13,500, and the jury found a verdict for him in the sum of $11,793.75. The case is here on the defendant's writ of error and bill of exceptions. Among the errors assigned are the following:

(1) The court erred in refusing to grant defendant's motion, at the conclusion of all the evidence, to direct a verdict in its favor, upon the ground that the plaintiff had failed to prove his case.

(5) The court erred in instructing the jury as follows:

"If you find that he [plaintiff] was the moving party, then you will come to the question of damages, and you may find either that Mr. Harris is entitled to damages according to the provisions of the contract, that is, according to the provisions of the schedule of August 21, 1913, in which he was entitled to the difference between the dealer's prices and the sales prices, and your damages would be based upon 27 trucks and these prices. * * *"

The contract of August 26, 1913, was embodied in a letter written by the defendant, the American Locomotive Company, through its assistant sales manager, R. B. Van Dyke, to the plaintiff, Harris, the terms of which were accepted by him, and in a writing containing a revised schedule of prices attached to the letter. The letter and revised schedule of prices read as follows:

"American Locomotive Company,

"Automobile Department, 1886 Broadway, New York.

"August 26, 1913.

"Mr. William A. Harris, American Locomotive Company, Providence, R. I.—Dear Sir: This will confirm our conversation today to the effect that on Alco trucks and pleasure cars you may sell in the state of Rhode Island, you are to receive the dealer's price mentioned in revised schedule of prices dated August 21st, copy of which is attached hereto; you to make your profit by selling cars and trucks to customers at the sales price named in the same schedule. It is understood you will take care of the necessary financing; that only standard product with standard equipment can be sold; that all jobs are to be sold for the earliest possible delivery, the trucks without bodies or special equipment. This arrangement does not give you the exclusive right of sale in Providence, as we reserve the right to deal direct with customers there, and the arrangement will continue only until our present product is disposed of, or is subject to cancellation by either party giving the other ten

days' notice. It is also understood that any existing commission arrangement covering the sale of our product is hereby canceled. If satisfactory, please note your acceptance on one copy of this letter and greatly oblige.

"Very truly yours,                    R. B. Van Dyke,
                                "Ass't General Sales Manager.

"Accepted.   William A. Harris."

"American Locomotive Company,

"Automobile Department, 1886 Broadway, New York.

"August 21, 1913.

"Revised Schedule of Prices.

"Effective this date, the following prices will prevail, to close out the balance of our trucks and pleasure cars:

"Any regular dealer is entitled to the dealers' prices.

|  | Dealers' Price. | Sales Price. |
|---|---|---|
| 2-ton chassis.................................... | $1,475.00 | $1,975.00 |
| 3½-ton chassis................................. | 1,825.00 | 2,325.00 |
| 5-ton chassis.................................. | 2,375.00 | 3,000.00 |
| 6-cylinder touring car, complete, with Rushmore self-starter ............................... | 3,000.00 | 3,500.00 |

"A deposit of at least two hundred dollars ($200) will be required with each car or chassis ordered; the balance will be on sight draft with bill of lading attached f. o. b. Providence. Tire specifications will be followed as far as we are able, but we reserve the right to equip with any standard tires we may have on hand. No bodies will be furnished by us except for the touring cars. All truck chassis will be furnished in the lead as heretofore. The touring cars are complete in every way, including Rushmore electric self-starter, and are finished in standard colors. Orders will be filled and cars shipped in the order in which they are received. First come, first served. We anticipate an unusual demand at these prices and advise you to act quickly.

"Yours very truly,                    C. A. Benjamin,
                                "General Sales Manager."

The court instructed the jury on the main question in the case, as follows:

"Now, are you satisfied that he [Harris] had got the Draper-Norton syndicate up to such a point that that deal would have gone through even on the basis of the advertised [sales] prices; or are you of the opinion that the deal only went through because of this special reduction in prices? I have illustrated the situation, gentlemen, and the different aspects which the case may have bearing upon the question of damages. Of course if you are convinced, gentlemen, that Mr. Harris was not the moving party who caused the consummation of this contract, then under the present declaration he would not be entitled to recover, and your verdict would be for the defendant."

[1, 2] No exception was taken to this instruction, and, however it may be viewed, it stands as the law of the case. The question, therefore, presented by the first assignment of error is whether there was any evidence from which the jury would be warranted in finding that Harris, in his negotiations with Norton and Draper, had gotten them up to the point where they had assented to take the trucks at the sales prices. The plaintiff's evidence was that upon securing the contract in New York he returned to Providence, and immediately inserted a notice in the morning paper of August 27th, advertising the trucks of the American Locomotive Company, stating the former prices at which Alco trucks of the company had been sold and the present reduced

prices, the latter being the sales prices fixed in the schedule of August 21st; that on Sunday, August 31st, he inserted a like advertisement in the newspapers; that on Wednesday, August 27th, at noon, he called upon Mr. Norton, at his office in Providence, and outlined to him the new proposition regarding the sale of the trucks and the prices which had gone into effect, that he was in a position to sell him a number of trucks at these prices, and that he and Draper could hold the trucks until after the stock of the American Locomotive Company was disposed of, and then he, Harris, would help them sell them at an increased price, which he would be able to do owing to his acquaintance with possible customers in Rhode Island; that he followed up the matter with daily interviews and talks with Mr. Norton, who promised to take the matter up at once with Mr. Draper, and that on Saturday, August 30th, he talked with both Norton and Draper and went to luncheon with the latter; that he made an appointment with them for the following Monday night, at which time they were to give him an answer; that they failed to keep the appointment, but on Tuesday, September 2d, arranged to meet him that night, which they also failed to do; that he then learned they had gone to New York, and at once telephoned the defendant's general sales manager, notifying him that Norton and Draper were his customers and were apparently trying to go over his head and buy directly from the company, and asked the general manager to protect his interest; that this conversation over the telephone took place before Norton and Draper reached the company's office; and that he also wrote the company a letter on September 3d, confirming his telephone message, and claiming Norton and Draper as his customers.

[3] This is a statement of the plaintiff's evidence in the view most favorable to him, and which was not supplemented or aided in any material respect by the evidence introduced by the defendant. It is apparent that the most favorable inference which the jury could draw from it was that the plaintiff's negotiations with Norton and Draper had reached the point where they would have assented to the purchase of the trucks at the sales prices but for the interference of the defendant in selling to them at prices below the sales prices. It does not warrant a finding that the negotiations had proceeded to a stage where Norton and Draper had assented to take the trucks at the sales prices, and nothing remained to be done on the part of the plaintiff to carry out the sale, so that he would be entitled to his commission under the contract as a debt due him. It is only "when a contract is at an end, either by its provisions or by the wrongful act of the defendant, so that nothing remains to be done but to pay money [that] general assumpsit will lie." Carroll v. Giddings, 58 N. H. 333, and cases there cited. Had the plaintiff's proof warranted a finding that his negotiations with Norton and Draper had reached the point where they had assented to take the cars at the sales prices, so that nothing remained to be done but for the defendant to deliver the cars and for Norton and Draper to pay for them, the plaintiff would have earned his commission under the contract and would have been entitled to that sum as a debt due him, which he could recover under the com-

mon counts. But his proof shows that his negotiations with Norton and Draper had only reached the point where, but for the interference of the defendant, he would have consummated the trade with them at the sales prices. This does not disclose a consummation of the sale, so far as the plaintiff is concerned, but a failure by reason of the defendant's breach of its contract with the plaintiff. In this situation the plaintiff could not recover his commissions under the common counts, for he had not earned them, but would be entitled to recover them, if at all, as damages, by declaring specially on the contract.

If, however, it can be said that the fair meaning of the charge of the court to the jury is that they could find a verdict for the plaintiff, provided they were satisfied on the evidence that Harris, in his negotiations with Norton and Draper for the sale of the trucks, had gotten them to the point where he would have effected a sale with them at the sales prices, but for the interference of the defendant, and that this is the law of the case, as no exception was taken to this branch of the charge, nevertheless the verdict cannot be sustained, for the court charged the jury on the question of damages, to which the fifth assignment relates, as follows:

"If you find that he [plaintiff] was the moving party, then you will come to the question of damages, and you may find either that Mr. Harris is entitled to damages according to the provisions of the contract, that is, according to the provisions of the schedule of August 21, 1913, in which he was entitled to the difference between the dealer's prices and the sales prices, and your damages would be based upon 27 trucks and these prices. * * * "

This charge would be right, under a count in indebitatus assumpsit, only in case the evidence warranted the conclusion that the plaintiff had brought the negotiations with Norton and Draper to such a stage that they had assented to take the trucks at the sales prices, and nothing further remained for the plaintiff to do. But, as above stated, the plaintiff's proof did not warrant the jury in reaching such a conclusion and, under the state of the proof disclosed, he could recover his commissions as damages only in case he had declared in special assumpsit. This charge was therefore erroneous.

[4] While it could be found on the evidence that the defendant broke its contract by interfering with and preventing the sale which the plaintiff was undertaking to negotiate with his customer, and that under the common counts he could recover what his services were reasonably worth, and such a view of the case was presented to the jury, still, as it is impossible to say whether the jury based its verdict upon this theory or upon the one complained of in the fifth assignment of error, the verdict cannot stand.

[5] When the defendant agreed with the plaintiff that he should be its representative for the sale of these trucks in Providence, with the right to seek customers there, and, in case he did bring about a sale at the sales prices, he should receive the commission specified in the contract, it impliedly agreed with him, notwithstanding its reservation of the right to sell to customers in Providence, that it would not interfere with negotiations which he had under way with customers in that locality, by undertaking to sell to them at reduced prices or in any

other way, and, had his declaration contained a count in special assumpsit, assigning the defendant's interference with the consummation of his negotiations with Norton and Draper as a breach of its contract, there can be little doubt but that, on the present state of the proof, the jury would have been warranted in finding a verdict in his favor.

The verdict, however, must be set aside, and 'the case remanded to the District Court for a new trial. Slocum v. New York Life Insurance Company, 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029. Under the circumstances we do not think it is necessary to consider the questions raised by the other assignments, as they are not likely to arise on a subsequent trial of the case.

The judgment of the District Court is reversed, the verdict is set aside, the case is remanded to the District Court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers its costs.

### On Petition for Rehearing.

[6] We do not think the plaintiff, under the facts presented in this case, should be allowed to file, as an amendment, a declaration in special assumpsit and have the judgment of the court below affirmed. As pointed out in our opinion of December 7, 1916, there was no evidence to warrant a verdict for the plaintiff upon the count in indebitatus assumpsit; and it cannot now be determined whether the jury rendered their verdict upon that count or upon the count in quantum meruit. On the count in indebitatus assumpsit, the court instructed the jury that they might find a verdict for the plaintiff on the evidence submitted to them, and, such being the case, it cannot be presumed that they did not do what the court told them they might do. If the jury rendered their verdict in the light of these instructions, they did not necessarily pass upon the questions involved under the count in quantum meruit; and, if they did not, they never passed upon the questions which would be raised under the count in special assumpsit. In any event, it is largely conjectural which course the jury pursued in rendering their verdict, and, this being so, we do not think this is a case in which the court can or should exercise its discretion and adopt the course suggested in the plaintiff's petition.

[7] The same line of reasoning is an answer to the further request in the plaintiff's petition that the new trial should be limited to the question of damages. To justify an appellate court in limiting the issues on a new trial to the question of damages, it should clearly appear that all questions in respect to liability have been considered and passed upon by the jury. This is not such a case.

Petition denied.