71 N.J. Super. 489 (1962)
177 A.2d 326
THE MORTGAGE CORPORATION OF NEW JERSEY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THE MANHATTAN SAVINGS BANK, A BANKING CORPORATION OF THE STATE OF NEW YORK, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 10, 1962.
*491 Mr. Everett M. Scherer for the plaintiff (Mr. Ronald M. Sturtz, on the brief; Messrs. Riker, Danzig, Marsh & Scherer, attorneys).
Mr. William Dickson Cunningham for the defendant.
LABRECQUE, J.S.C.
The plaintiff brings the present action asserting a claim that it is entitled to payment of liquidated damages pursuant to the terms of a servicing agreement entered into between it and the defendant. The plaintiff moved and the defendant countermoved for the granting of a summary judgment. Both sides conceded at the oral argument that the case was one which called for the entry of summary judgment.
The material facts are set forth in the exhibits, the affidavits filed and the deposition of John J. Novak, one of defendant's officers. They are uncontroverted and may be summarized as follows:
The plaintiff, a New Jersey corporation with its principal place of business in Newark, entered into a servicing agreement with the defendant, a New York banking corporation having its principal office in New York City. By the terms of this agreement the plaintiff was engaged to service mortgages held by the defendant. This involved collection of payments due the defendant on the latter's mortgages and the forwarding of same on to the defendant. It also involved other functions more particularly set forth in the agreement.
*492 The pertinent portion of the agreement recited that the plaintiff was to service such notes and mortgages or deeds of trust acquired by the defendant in the course of its business, as might be mutually agreed upon from time to time. However, the only mortgage that was ever serviced under the agreement was the F.H.A. mortgage which is the subject matter of the present suit. This mortgage, dated June 5, 1950, was made by Palisades Court, mortgagor, in the sum of $431,500 to The Trust Company of N.J., mortgagee. It provided for interest at 4% per annum and its date of maturity was December 1, 1983. It permitted prepayment of the debt secured thereby in the following language:
"Notwithstanding the provisions of this mortgage and the bond accompanying same and in the event this debt is paid in part or in full prior to maturity, then and in such event all parties liable for the payment hereof agree to be jointly and severally bound to pay to the holder hereof the following prepayment premiums:
Prepayment shall be allowed during the first ten years from the date of the first principal and interest payment on this obligation upon the payment to the holder hereof of premiums in an amount equal to fifteen per centum (15%) of the original principal amount due herein, and thereafter prepayments shall be allowed upon payment to the holder hereof of premiums in an amount equal to three per centum (3%) of the original principal amount due herein if payment is made during any year after the end of the tenth year from the date of the first principal and interest payment on this obligation and before the end of fifteen years from the date of said first principal and interest payment due under this obligation and upon payment to the holder hereof of premiums in an amount equal to two percentum (2%) of the original amount due herein if payment is made in any year after the end of the fifteenth year from the date of the first principal and interest payment on this obligation and before the maturity date of this mortgage.
Notwithstanding the foregoing provisions, privilege is reserved to make prepayments of principal in an amount not exceeding fifteen per centum (15%) of the original principal amount of this mortgage in any one calendar year without prepayment premium."
The servicing agreement which the parties entered into contained the following relevant provisions:
"WHEREAS, Manhattan [defendant] has acquired or from time to time will acquire as holder and owner, certain mortgage or deed *493 of trust notes each secured by a mortgage or deed of trust, on real property; and whereas the parties hereto contemplate that the Servicer shall service such notes and mortgages or deeds of trust as from time to time by mutual agreement shall be specified and made subject to the terms hereof, which notes, mortgages or deeds of trust are hereinafter sometimes referred to as `the mortgages' or collectively as `the mortgage'; and the mortgage to which it is contemplated this agreement is first to relate is that referred to above the text of this agreement; and
WHEREAS, Manhattan desires the Servicer [plaintiff] to service the mortgage; and

* * * * * * * *
NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, it is agreed by and between the parties hereto as follows:

COLLECTIONS FROM MORTGAGORS
1. Continuously from the date hereof until the principal and interest of the mortgage are paid in full, the Servicer will proceed diligently to collect all payments due under the mortgage, or under the charter of the mortgagor or Regulations of the Federal Housing Commissioner for replacement reserves with respect to the mortgaged property, as and when the same shall become due and payable * * *.

* * * * * * * *

TERMINATION WITHOUT CAUSE
16. Manhattan as of right may also immediately terminate this agreement without cause, upon written notice to the Servicer and upon payment to the Servicer as penalty or liquidated damages (but without any further liability whatsoever to the Servicer) of an amount equal to the servicing fees which the Servicer would have received if the Servicer had continued to service the mortgages, irrespective of prepayment privileges and all future defaults, for a period of four years from the date of giving such notice of termination, * * * If, on the date of termination of this agreement, * * * any of the mortgages are in default for sixty (60) days or more in payment of principal and interest or otherwise in default so as to give Manhattan the right to foreclose, then, as to such mortgages this agreement may be terminated without payment.

* * * * * * * *

TERM OF AGREEMENT
18. Unless sooner terminated as herein provided or by mutual agreement, this agreement shall continue from the date hereof during the term of the mortgage, and until the principal and interest of the mortgage are paid in full, or until the mortgage is assigned to the Federal Housing Commissioner in order to obtain benefits of FHA mortgage insurance; provided, however, that this agreement shall nevertheless remain in effect for the period and to the extent provided in paragraph 11 hereof." (Emphasis added)
*494 The agreement further provided that the plaintiff, as servicer, was forbidden to waive prepayment terms or penalties if the mortgagor sought to reduce or retire the mortgage without the written consent of the defendant, as mortgagee. The agreement was silent, however, in imposing any equivalent obligation on the defendant to secure the consent of the plaintiff before waiving any prepayment penalties.
Compensation for the services of the plaintiff consisted of the reservation from monthly collections of one-twelfth of one-fourth of 1% of the principal amount of the mortgage, together with any "late charge."
Although the original named mortgagee was The Trust Company of N.J., the latter was in fact holding the mortgage pursuant to an agreement between it and the plaintiff whereby The Trust Company was to hold the mortgage for the benefit and at the risk of the plaintiff until it sold or otherwise disposed of the same.
The plaintiff, as part of the consideration for the sale of the mortgage, required the defendant to enter into the servicing agreement. The agreement itself was basically a standard form prepared and used by the defendant for handling its F.H.A. mortgages. The plaintiff, however, requested and obtained certain changes in pertinent portions thereof. These changes increased the amount of liquidated damages which the plaintiff would become entitled to receive if the defendant cancelled the contract without cause, from an amount equivalent to one year's service fees to four years' service fees; and eliminated a provision whereby the defendant could have cancelled the agreement after the first ten years without the payment of any damages whatsoever.
In May 1959 Palisades Court deeded the property, encumbered by the mortgage here involved, to 504 Broad Avenue Corp., a corporation of New Jersey.
In August 1960 the 504 Broad Avenue Corp. entered into a refinancing arrangement with the defendant. Pursuant *495 to the terms of this arrangement, the corporation procured a conventional (i.e., non-F.H.A.) loan from the defendant in the principal amount $325,000. This loan was secured by a conventional mortgage on the same property which was the subject of the servicing agreement. The mortgage and the loan secured thereby was to be amortized in 15 years at an interest rate of 6% per annum. Prepayment clauses were carried over substantially the same as they existed in the original mortgage, with the exception that the 15% penalty for prepayment within the first ten-year period was not included. Moreover, when the F.H.A. mortgage was replaced by the conventional mortgage the bank waived the prepayment penalty of $64,725 which the mortgagor would have been required to pay under the F.H.A. mortgage if the principal amount was prepaid within the first ten-year period.
At the time the refinancing arrangement was transacted, $359,314.61, including interest, remained due and owing on the original mortgage. There was credited to the borrower an F.H.A. replacement reserve in the amount of $17,748.95, leaving a debt due the defendant on the original mortgage of $341,565.66.
As aforementioned, the mortgagor, as a result of the refinancing arrangement, procured a new conventional loan in the amount of $325,000. The proceeds of this loan, in the form of a check payable to the mortgagor-borrower, were used to satisfy all but a small portion of the outstanding indebtedness on the original mortgage. This was accomplished by the endorsement of the check back to the defendant by the mortgagor-borrower. The balance on the original mortgage debt was then paid by certified check of the borrower in the amount of $16,565.66.
The defendant thereupon treated the F.H.A. mortgage as having been paid in full, and it was subsequently cancelled of record. It declined to pay further service fees to the plaintiff, asserting that its obligations under the *496 servicing agreement had been terminated because the mortgage to which the agreement related had been paid in full.
The plaintiff, on the other hand, took the position that the mortgage had not been paid in full and demanded damages in an amount equal to a four-year service fee, as provided for in the servicing agreement. When payment was not forthcoming the present action was commenced.
The plaintiff contends that the refinancing agreement was a mere bookkeeping transaction by which the defendant merely debited and credited itself with the payment and receipt of $325,000, leaving it in exactly the same position it had been before, with the exception that it would now receive interest at the rate of 6% per annum and would not be subject to the servicing charge provided for in the agreement. It contends that, in the true sense, approximately 90% of the principal and interest of the debt due to the defendant from the mortgagor still remained due and owing to the defendant after the refinancing arrangement, and that only approximately 10% of the mortgage debt was actually paid.
The defendant, in resisting plaintiff's motion and arguing for judgment in its favor, urges that the original mortgage was paid in full, so that the servicing of the mortgage was no longer to continue and the clause of the agreement relating to liquidated damages for breach without cause is thus plainly inapplicable.
At this point it should be noted that the mortgagor as well as the defendant benefited greatly from the refinancing arrangement. The defendant, as aforementioned, received a 2% raise in the interest rate and elimination of the service charge. The mortgagor was benefited in that it no longer had to pay the F.H.A. insurance fee; it was not required to maintain a replacement reserve required by the F.H.A.; and it was relieved of the restrictions imposed by section 608 of the National Housing Act, 12 U.S.C.A. § 1743.
We turn first to consideration of whether, on the undisputed *497 facts recited above, the original mortgage can be considered as having been "paid in full" within the meaning and intendment of the servicing agreement, thus terminating the defendant's obligation as to payment of service fees on the mortgage.
The contract was made in New York and both parties agree that New York's substantive law is applicable. We turn, therefore, to consideration of New York cases referable to the interpretation of contracts of the type here involved.
The substantive law of our sister state lays down certain general principles having application to the present dispute. The first of these is that ordinarily a business contract is to be construed and interpreted "in the light of the understanding of a reasonable business man." And the intention thus spelled out is controlling even though it may not be in accord with the parties' actual intention. Goddard v. Holland Transportation Co., 84 N.Y.S.2d 410 (Sup. Ct. 1948), affirmed 277 App. Div. 755, 97 N.Y.S.2d 372 (App. Div. 1950); Bird v. St. Paul Fire & Marine Ins. Co., 224 N.Y. 47, 120 N.E. 86, 13 A.L.R. 875 (Ct. App. 1918); Arthur A. Johnson Corp. v. Indemnity Ins. Co. of No. Am., 7 N.Y.2d 222, 196 N.Y.S.2d 678, 164 N.E.2d 704 (Ct. App. 1959).
In the instant case it must have been obvious to the defendant that the plaintiff, when it insisted upon the servicing agreement as part of the consideration for the sale of the mortgage it controlled, and when it increased the sum to be received by it for a breach of the agreement from a one-year to a four-year service fee, had contemplated a long-term servicing agreement terminable only in accordance with the agreement's provisions. It is inconceivable that any reasonable business man intending to enter into an agreement would include in that agreement a phrase or provision by which his contract rights could be made valueless by such a simple device as delivery of a check to the mortgagor by the mortgagee and its immediate *498 endorsement and redelivery to the mortgagee, or that his rights could be terminated by the recording of this transaction on the other party's books of account as "payment in full."
A construction should not be given to a contract which will place one of the parties at the mercy of the other. Simon v. Etgen, 213 N.Y. 589, 107 N.E. 1066 (Ct. App. 1915); Carter v. Bradlee, 245 App. Div. 49, 280 N.Y.S. 368 (App. Div. 1935), affirmed 269 N.Y. 664, 200 N.E. 48 (Ct. App. 1936). Such would be the result if the defendant's line of reasoning were to be adopted. A valuable contract right specifically conferred upon the plaintiff as part of the consideration for the sale of its mortgage would thus be made completely worthless. It would be unreasonable if the plaintiff's rights could be defeated at any time by the mere substitution by the defendant of a new mortgage for the old! A construction which would lead to such an unreasonable result should be avoided and a more reasonable construction sought if it is possible to do so. Shipman v. General Transistor Corp., 22 Misc.2d 632, 198 N.Y.S.2d 852 (Sup. Ct. 1960). Here the plaintiff had serviced the mortgage for over nine years and collected compensation for so doing in an amount of more than $9,000 before the servicing agreement was terminated. But if the defendant's proffered construction is correct, what would have prevented it, once it had possessed itself of the mortgage by purchase from the plaintiff, from terminating the servicing agreement in the same manner as here shown at the end of but 4 1/2 years, or three years, or one year, or even after a shorter period of time? Surely a construction which would thus render worthless part of the very consideration for the sale of a valuable mortgage would represent the ultimate in unreasonableness.
In the case sub judice the defendant was, both before and after the refinancing arrangement, the creditor of the original mortgagor (or its successors in interest) for approximately *499 the same amount. Both the mortgagor and the defendant mortgagee benefited while at the same time seeking to cut off the plaintiff from the profitable source of revenue which was part of the consideration for the original acquisition of the mortgage. The court is unable to construe the transaction in question as the payment in full which the servicing agreement prescribed as the terminal point of defendant's liability to the plaintiff.
Aside from these considerations there is implied in every contract a covenant not to render valueless the rights conferred by that contract. Lutgen v. Kagan, 189 Misc. 732, 72 N.Y.S.2d 562 (Sup. Ct. 1947); Lowe v. Feldman, 11 Misc.2d 8, 168 N.Y.S.2d 674 (Sup. Ct. 1957), affirmed 6 App. Div.2d 684, 174 N.Y.S.2d 949 (App. Div.); Shipman v. General Transistor Corp., supra; Samuel Baum & Sons, Inc. v. Educational Alliance, 12 Misc.2d 270, 172 N.Y.S.2d 1015 (Sup. Ct. 1958). Cf. Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379, 388 (E. & A. 1947). This obligation is sometimes referred to as "an implied covenant of good faith and fair dealing." Regardless of the name to be applied to it, it seems clear that in the circumstances of the case sub judice, there would be implied in the servicing contract a covenant on the part of the defendant not to do anything to destroy or render valueless the rights conferred therein upon the plaintiff.
One of the earlier New York cases dealing with the general principle that a party to a contract should not do anything which would have the effect of impairing the right of the other to receive the fruits of the contract is Carns v. Bassick, 187 App. Div. 280, 175 N.Y.S. 670 (App. Div. 1919). The facts in that case were as follows: The plaintiff and the defendant had entered into a contract under the terms of which the plaintiff was to be paid brokerage commissions for procuring munitions orders from the French Government at a fixed minimum sales price. The commissions to be paid were based upon the difference *500 between the fixed minimum and the final sale price. When the plaintiff was ready to consummate an agreement with the French Government, in accordance with the contract, at a price above minimum, the defendant itself concluded a sales contract with the French Government at a price below the original minimum. The plaintiff was thus prevented from consummating the sale. The Appellate Division held that the defendant had violated an implied covenant in the following language:
"The contention of the plaintiffs, which I think is sound, is that, where a party stipulates with another to do a certain thing, he thereby impliedly promises that he will himself do nothing which may hinder or obstruct that other from doing that thing; that in violation of such implied agreement the defendants intentionally interfered with plaintiffs' negotiations with the French government, and, when the plaintiffs were on the eve of success, defendants not only hindered and obstructed the plaintiffs, but rendered it impossible for the plaintiffs to complete performance, to plaintiffs' damage. In Patterson v. Meyerhofer, 204 N.Y. 96, 100, 97 N.E. 472, 473, the court said:
`In the case of every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part.'
To the same effect are May v. Hettrick Brothers Co., 181 App. Div. 3, 167 N.Y. Supp. 966, affirmed by the Court of Appeals, March, 1919, 226 N.Y. 580, 123 N.E. 878, and American Locomotive Co. v. Harris, 239 Fed. 234, 239, 152 C.C.A. 222.
The courts are bound to give the same force and effect to the implied agreement of the parties, where such implications are determinable, as to the parts which are expressed, and, when once it is determined what the implied provisions are, they are to be read into the contract, and the rights of the parties are to be adjudged as though such provisions were expressed. Grossman v. Schenker, 206 N.Y. 466, 100 N.E. 39. The allegations above summarized show a clear violation by the defendants of their implied agreement that they would not intentionally and purposely do anything to prevent the plaintiffs from doing the thing that plaintiffs were expressly employed to do. * * *" (175 N.Y.S., at pp. 671-672)
Another leading New York case holding that an implied covenant of good faith and fair dealing arises upon the consummation of a contract is Kirke La Shelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 188 N.E. 163 (Ct. *501 App. 1933). In that case the plaintiff and the defendant entered into a contract in 1921 which provided that the plaintiff was to be given the right of participation in the moneys received by the defendant for revivals of a play on the stage in New York City, on the road, and in stock. In 1928, after the advent of sound motion pictures, the defendant granted to the Metro-Goldwyn-Mayer Corporation the exclusive "talkie" rights for the same play. The plaintiff brought suit against the defendant claiming that it was entitled to share in the moneys received by the defendant when it granted the "talkie" rights to M.G.M. The Court of Appeals stated, as one of the questions presented, the following:
"There is presented also the question as to whether there should be implied in the contract of settlement a covenant on the part of the respondents not to do anything to destroy or ignore appellant's rights under the contract, for a breach of which implied covenant the respondents have incurred liability for the resulting damage to be measured by one-half of the profits received by them.
It is conceded that at the time when the settlement agreement was entered into, `talkies' were unknown commercially and were, therefore, not in contemplation of the parties. It is not seriously contended on the part of the respondents that the grant of `talkie' rights and the production of sound pictures pursuant to that grant did not affect to appellant's damage the value of production of the play on the stage in New York City, on the road and in stock. It is contended by respondents that the grant to appellant was limited to the presentation of the play on the stage in New York City, on the road, and in stock, and that in view of the limited grant all other rights were retained by the respondents and were subject to their disposal without liability to appellant." (188 N.E., at p. 165)
In holding for the plaintiff, the court relied upon other decisions relating to the principle that a party to a contract should not do anything which would have the effect of impairing the right of the other to receive the benefits of the contract. After noting that the contract with M.G.M. was one which would diminish the value of the dramatic rights contracted to the plaintiff, since no one would be interested in seeing the play when it could be seen in the "talkies," the court went on to hold that:
*502 "It seems to us that the principles applied in Harper Bros. v. Klaw & Erlanger (D.C.) 232 F. 609, and Manners v. Morosco, 252 U.S. 317, 40 S.Ct. 335, 64 L.Ed. 590, are applicable here. * * *

* * * * * * * *
In the last analysis those cases only apply the principle that in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing. Wilson v. Mechanical Orguinnette Co., 170 N.Y. 542, 63 N.E. 550; Brassil v. Maryland Casualty Co., 210 N.Y. 235, 104 N.E. 622, L.R.A. 1915A, 629.
Respondents seek to distinguish those cases on the ground that the courts were not construing a contract, but dealing with a question of whether one without authority could appropriate an essential part of a copyright. Those cases were decided not on copyright law, but on the law of contracts * * *

* * * * * * * *
It seems to us clear that having granted to appellant one-half of the benefits of the production of the play in the manner specified in the contract, there was an implied obligation on the part of the respondents not to render valueless the right conferred by the contract, especially in view of the fact that they breached the express covenant of the contract to refrain from making any agreement affecting the rights conveyed by the appellant without its approval. Having breached the contract, they cannot be permitted to retain the full profits resulting from the wrong."
And in the later case of Price v. Spielman Motor Sales Co., 261 App. Div. 626, 26 N.Y.S.2d 836 (App. Div. 1941), the court summarized the doctrine under consideration stating:
"* * * The following excerpt from 25 Cornell Law Quarterly, 615, summarizes the rule to be applied: `Covenants are implied in two situations, one where the covenant is so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and the other where the covenant was probably beyond the pale of conscious thought of the parties but is necessary in order to give effect to and effectuate the purpose of the contract as a whole. Though a court balks at making a contract for the parties, it will, where justice and expediency demand, infuse the contract with a spirit of good faith and fair dealing in order to justify the implication of a covenant which will prevent one party from impairing the right of the other party to receive the fruits of the contract.' Such a promise not to change the value will be implied under the circumstances disclosed by this writing where we may assume that it would have *503 been made if attention had been called to it (Dermott v. State, 99 N.Y. 101, 1 N.E. 242) and will be raised to enforce a manifest equity and to reach a result which the unequivocal acts of the parties indicate that they intended to effect. Genet v. President, etc., D. & H.C. Co., 136 N.Y. 593, 32 N.E. 1078, 19 L.R.A. 127. `The law has outgrown its primitive stage of formalism when the precise word was the soverign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be "instinct with an obligation," imperfectly expressed * * *.' Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 91, 118 N.E. 214."
In the present case, the defendant by waiving the penalty for prepayment, by entering into the refinancing arrangement with the mortgagor, and by bringing about cancellation of the original mortgage, rendered valueless the right to service the mortgage which the plaintiff had insisted upon as consideration for assignment of the mortgage to defendant.
The defendant urges that these cases deal with plain violations of the terms of the contracts and are therefore inapplicable to the case sub judice. With this the court cannot agree. The rationale of the decisions cited supra was the implication of a promise that had been previously lacking in the contract itself.
The defendant also contends that the servicing agreement was not terminated by the cancellation of the mortgage and its refusal to pay servicing fees thereafter, and that the servicing agreement is still in full force and effect since it contemplated the referral to the plaintiff, from time to time in the future, of other F.H.A. mortgages. The court concludes, to the contrary, that the legal effect of the cancellation of the mortgage was the termination of the agreement without cause. Although the agreement purportedly related to future mortgages, in reality the mortgage in question was the only one to which it was ever applied. During the more than nine years that the agreement was in force no other mortgage was ever referred to the plaintiff, nor has any been referred to it since the institution of this suit. The agreement imposes no binding obligation *504 on the defendant to submit further mortgages for servicing or on the plaintiff to service any additional mortgages so submitted. In the introductory part of the agreement, the only place where it is mentioned, reference is made only to such mortgages as the parties should by mutual agreement make subject to the terms thereof. The defendant cannot thus insulate itself from the consequences arising from its breach. If the defendant's line of reasoning were to be adopted, the agreement would have to be considered as one which could never be terminated by the defendant, since it could always state that it is contemplating the future referral of mortgages to the plaintiff. Such a construction of the agreement would contravene the court's obligation to look at the agreement in the light of the understanding of a reasonable businessman. Goddard v. Holland Transportation Co., supra; Bird v. St. Paul Fire & Marine Insurance Co., supra; Arthur A. Johnson Corp. v. Indemnity Ins. Co. of No. Am., supra.
The defendant mentions in a footnote, but does not appear to press the point in its brief, that the courts of New York are reluctant to enforce penalties in contracts. It points to the fact that the amount to be paid the plaintiff in case of a breach on the part of the defendant is styled "penalty or liquidated damages." However, in construing a contract in which the term "liquidated damages" or "penalty" is used, the courts are not to be guided by the name given to the sum to be paid but rather by the true nature of the obligation. Ward v. Hudson River Bldg. Co., 125 N.Y. 230, 26 N.E. 256 (Ct. App. 1891). If the damages for the breach of a contract are uncertain and the figure to be paid is not, on the face of the contract, so greatly in excess of the probable damage as to show that the parties could not have arrived at it except as a penalty, the amount provided is considered as being liquidated damages. Ward v. Hudson River Bldg. Co., supra; Kelly v. Board of Education of City of New York, 8 Misc.2d 1007, 169 N.Y.S.2d 405 (Sup. Ct. *505 1957). Moreover, it is so considered if at the time of contracting, damages for the breach were uncertain prospectively. The provision for payment is not considered a penalty because the damages are certain after the breach. Seidlitz v. Auerbach, 230 N.Y. 167, 129 N.E. 461 (Ct. App. 1920); Dunn v. Morgenthau, 73 App. Div. 147, 76 N.Y.S. 827 (App. Div. 1902), affirmed 175 N.Y. 518, 67 N.E. 1081 (Ct. App. 1903). In the instant case the servicing contract was to run over a period of years. The damages were not certain at the time of contracting. Only when the defendant breached the contract did the amount of damages become certain. Furthermore, the amount agreed upon was not greatly in excess of the value of the probable damages. Under these circumstances it appears clear and it is determined that the provision in question provides for liquidated damages rather than for a penalty.
As an alternative to its countermotion for summary judgment, the defendant contends that the plaintiff claims bad faith on the defendant's part and that a jury question is thus made out. But the question of whether the defendant acted in good faith or bad faith is not material to the issue to be here resolved. Under the New York cases, there exists an implied promise applicable to the agreement sub judice not to render a contract right worthless. The defendant has been found to have violated this promise. Whether it did so because of a lack of integrity or in the utmost good faith cannot change the legal effect of its action. Thus no question remains for determination by the trier of the facts.
In light of all that has been stated above the court finds that the present case presents a proper situation for the application of R.R. 4:58-1 et seq., in that no genuine issue as to a material fact exists. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67 (1955). The plaintiff's motion is accordingly granted and the countermotion of the defendant is denied. Judgment should therefore *506 be entered in favor of the plaintiff and against the defendant in the sum of $3,600 plus interest and costs.
An appropriate order may be submitted on notice unless consented to as to form.