(120 App. Div. 422)

### CREAMER v. METROPOLITAN SECURITIES CO. et al.

(Supreme Court, Appellate Division, Second Department. June 7, 1907.)

CONTRACTS—CONSTRUCTION—IMPLIED COVENANT—BREACH.

> Defendant B. purchased certain street railroad properties from plaintiff's assignor, agreeing to pay $500,000 in any event, assumed to represent properties exclusive of a franchise, which, as then existing, was valueless, because of a provision for payment to the city of New York of 100 per cent. of its gross annual earnings. An additional $500,000 was to be paid if the Legislature ratified the franchise and reduced the municipality's percentage of gross receipts to 1 per cent., and $600,000 additional was to be paid when the Court of Appeals, within five years from the date of the contract, sustained the legislation necessary to give value to the franchise. The necessary legislation was enacted, whereupon B., or defendant Securities Company, as his representative, paid $1,000,000. A supplemental agreement was then made, providing that a sum of $200,000 previously deposited to indemnify B. for claims against the properties should be retained out of the additional $600,000, instead of the $1,000,000, as provided in the original contract. Held, that such agreements contemplated the actual exercise of the franchise by B. or his representatives after the necessary legislation had been procured to render the same valuable, in order that proceedings might be maintained to test the validity of such legislation, which was an implied covenant on B.'s part; and, no attempt having been made to use the franchise until after it was too late to secure action by the courts thereon within the time provided in the contract in order to enable plaintiff's assignor to secure the deferred payment, plaintiff was entitled to damages for breach of such covenant.

Appeal from Special Term, Kings County.

Action by Frank D. Creamer against the Metropolitan Securities Company and another. From an interlocutory judgment overruling a demurrer to the complaint, defendants appeal. Affirmed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

J. P. Cotton, Jr., for appellant Metropolitan Securities Co.
Page, Crawford & Tuska, for appellant Bussing.
Augustus Van Wyck, for respondent.

WOODWARD, J. The defendants demur to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. The court at Special Term has overruled the demurrer, and the question presented upon this appeal is whether there is an

implied covenant or promise on the part of defendants that they should, through certain corporations in their control, afford an opportunity to litigate certain questions, upon the determination of which by the Court of Appeals depended the right of the plaintiff to the sum of $600,000.

The question depends upon the construction of a very complicated contract, or series of contracts, made and entered into between one Patrick A. Flynn and Robert Bussing. Mr. Flynn has assigned all of his rights to the plaintiff, and the defendant Securities Company has assumed all of Mr. Bussing's liabilities under these contracts. The original and principal contract was entered into on the 4th day of February, 1901. It provided for the sale of certain street railroad property and franchises in the county of Westchester and the capital stock of the People's Traction Company, a surface railway company which owned a street railway franchise in the northern part of the island of Manhattan, acquired under a consent of the common council of the city of New York dated July 2, 1895. This franchise was obviously without value as it stood at the time this contract was made, for it required the payment to the city of New York of 100 per cent. of its gross earnings annually. It was contemplated, however, that this burdensome or prohibitive restriction might be removed, and the contract provided that, "on contingencies and with the reservations" thereafter stated, Bussing would pay to Flynn the sum of $1,600,000 for these properties. The provision of the contract providing the contingencies and reservations here under consideration reads as follows:

"(a) If (1) at any time within two years from the date hereof the Legislature of New York shall pass an act or acts, agreed upon by counsel for the parties hereto as validating the aforesaid consent of the common council of New York City, adopted July 2, 1895, and the comptroller's sale of the People's Traction Company of the franchise therein provided to be sold, and also extending the time to at least January 1, 1904, for filing the bond required by section 93 of the railroad law, or substituting a new bond, and for obtaining the necessary consents of property owners, and for commencing railroad construction on the routes described in said common council consent, and also reducing or providing a means for reducing the percentage or gross receipts payable according to the terms of the franchise sale aforesaid to not more than 1 per cent. of such gross receipts; * * * and if (2) said percentage shall in fact be according to any such means reduced within two years from this date, both parties agreeing to co-operate to secure such reduction; and if (3) within the same two years the Court of Appeals shall establish the validity of said consent and sale, and of said percentage reduction—that is to say, in the event of all of the aforesaid contingencies happening, the party of the second part shall, within thirty days thereafter, pay to the party of the first part the sum of one million six hundred thousand dollars ($1,600,000) in cash or securities: * * * provided, however, that in the event of a portion only of said contingencies happening, to wit, those specified in subdivisions 1 and 2 of this division (relating to the amendment of the railroad law and reduction of said percentage), the party of the second part shall * * * pay to the party of the first part the sum of one million dollars ($1,000,000) in cash or securities as above provided with respect to said payment of $1,600,000; and if thereafter, but within five years from date, the contingencies specified in subdivision 3 (relating to a decision of the Court of Appeals) shall take place, the party of the second part shall, within thirty days thereafter, pay to the party of the first part the further sum of six hundred thousand dollars ($600,-000) in cash or securities as above provided.

"(b) In case nothing shall be payable under subdivision 'a' of this paragraph, then the party of the second part shall within thirty days after demand in writing by the party of the first part, pay to the party of the first part the sum of five hundred thousand dollars ($500,000) in cash or securities as above provided with respect to said payment of $1,600,000.

"(c) It is agreed that two hundred thousand dollars ($200,000) in cash or securities, of the sum to be paid as aforesaid, whether the same is to be paid under subdivision 'a' or subdivision 'b' of this paragraph, shall be paid by the party of the second part making a deposit of that amount with the Morton Trust Company as an indemnity fund to be retained by said trust company for one year, or longer, if necessary, to meet the contingency of valid and lawful claims for causes existing prior to the date hereof, being asserted successfully. in a court of law within said year against the companies or some or one of the companies whose securities are sold hereunder, or against their successors respectively, or against the party of the second part, or his successors or assigns, as the purchaser of the same, said two hundred thousand dollars ($200,000) to be paid to the party of the first part by said trust company when any such said claims shall have been satisfied or in any manner ended by the party of the second part, it being understood that the party of the second part does not assume any such claims now or hereafter."

The above provisions were modified by a subsequent agreement of the same date, in which it was provided that:

"The party of the second part agrees that the precise periods of time and dates specified in subdivision 2 of paragraph 6 of the agreement hereto annexed shall not be regarded as of the essence of the contract, but that the sum of one million dollars ($1,000,000) 'and the further sum of six hundred thousand dollars ($600,000) respectively shall be payable as prescribed in said subdivision 'a,' provided the conditions applicable to each payment specified in said subdivision shall, at any time before demand by the party of the first part for payment under subdivision 'b' of said paragraph 6 and actual payment thereunder (not extending, however, five years from the date hereof) be complied with."

And, as bearing upon the intention of the parties, it may be proper to quote the eighth paragraph of this modifying agreement, which provided that:

"In case any question shall arise as to the sufficiency of a decision by the Court of Appeals upon the questions provided in the first subdivision (3) of division 'a' of paragraph 6 of the annexed agreement, the parties agree that a statement of facts embodying the facts of this transaction to such extent as may be necessary to enable the court to pass upon the question shall be submitted in such form as shall enable the court to duly pass upon such question, to the Appellate Division of the Supreme Court of the Second Judicial Department, the decision of which shall be deemed final unless reversed by the Court of Appeals."

Just why all of this circumlocution was necessary it is difficult to discover. The real agreement appears to have been that Bussing undertook to buy the several railroad properties from Flynn; that he was to pay the sum of $500,000 in any event, which may be assumed to have represented the properties outside of the People's Traction Company franchise, for all of the contingent amounts were based upon matters relating to this franchise. An additional $500,000 was to be paid if the Legislature ratified the franchise and reduced the percentage of gross receipts to 1 per cent., and the $600,000 additional was to be paid if the Court of Appeals, within a period of five years from the date of the contract, sustained the legislation necessary to give value to the franchise. The Legislature did enact the necessary

legislation, and Bussing or the Securities Company paid the sum of $1,000,000. In a supplemental agreement of December 9, 1901, Flynn acknowledges the final payment on the $1,000,000 account, and it is agreed that:

"The two hundred thousand dollars ($200,000) which, pursuant to the provisions of subdivision 'c' of paragraph 7 of said agreement of February 4, 1901, was to be deposited with the Morton Trust Company as an indemnity fund, shall be so retained out of the six hundred thousand dollars ($600,000) hereafter payable to the party of the first part under the terms of said agreement of February 4, 1901, when certain contingencies specified in said agreement occur; the party of the second part hereby agreeing to waive his right under the agreement of February 4, 1901, to retain said indemnity fund out of the one million dollars ($1,000,000) now due and payable," etc.

The purpose of this clause, it would seem, was to indemnify Bussing against claims which might be asserted against the properties he was buying. He contemplated buying them free of liens and incumbrances, and under the original agreement he was to reserve $200,000 out of the $1,000,000 agreed to be paid; but in December of that year the contract had been so far fulfilled that Bussing consented to making the full payment of $1,000,000, and to let the $200,000 stand as a payment upon the remaining $600,000 to be paid in the event of the Court of Appeals giving its sanction to the legislation which had then been enacted, and under which Bussing had completed his contract for paying the $1,000,000. It seems entirely clear, therefore, that in December, 1901, the parties to the contract now under consideration understood that there was a strong likelihood of the $600,000 becoming due and payable; for, unless this was true, Bussing would have no fund out of which to indemnify himself against the contingency of claims being successfully asserted against the properties purchased. Courts do not decide academic questions. In order that Flynn or his assignee should have any claim upon the $600,000 made contingent upon the action of the Court of Appeals in reference to the legislation which had been secured, it was necessary that Bussing or his successors in interest should take some steps to assert rights under the franchise of the People's Traction Company; and from the fact that Bussing had agreed, in effect, in the event of securing the necessary legislation, to pay $500,000 for this franchise, Flynn was warranted in assuming that the defendants, who, under the contract, had full control of the corporate powers of the People's Traction Company, would take the necessary steps to enable the courts to determine the questions on which the contingent sum depended. It is true that under the language of the contract Bussing does not agree to do anything to bring about the necessary litigation; but when we get beneath the verbiage of this agreement or series of agreements, and discover that in effect $1,100,000 of the $1,600,000 involved in the contract related to the People's Traction Company franchise, and that Bussing agreed to and did pay $500,000 for the property upon the Legislature enacting the legislation which it was mutually agreed should be secured, if possible, leaving $600,000 to be paid in the event of the legislation being approved by the Court of Appeals, it is evident that the contracting parties contemplated that the question should be placed in shape where it could be litigated, and there was an implied promise on

the part of Bussing that this should be done. This is made entirely
clear by the provision of the eighth paragraph of the supplemental
agreement of February 4, 1901, that:

"In case any question shall arise as to the sufficiency of a decision by the
Court of Appeals upon the questions provided in the first subdivision (3) of
division 'a' of paragraph 6 of the annexed agreement, the parties agree that
a statement of facts embodying the facts of this transaction to such extent
as may be necessary to enable the court to pass upon the question shall be
submitted in such form," etc.

Flynn had a right to assume, when leaving more than one-half of the
agreed value of the property in this franchise to depend upon a contin-
gency, that Bussing would so handle the property that the question
might be determined. He saw that the property, as it stood, was of
no value, but that it would have a value if the Legislature ratified the
sale and reduced the agreed percentage. Bussing saw that this prop-
erty would have value, and he agreed, in effect, to give $500,000 for
the same as soon as the Legislature had acted upon the proposition
in accord with his ideas, with $600,000 additional as soon as this legis-
lation should be sanctioned by the Court of Appeals. Knowing that
$500,000 was to be invested as soon as the legislation was secured,
Flynn had a right to assume that this investment would not be made
unless Bussing or his successors in interest contemplated making use
of the franchise; and it is not to be doubted that this contract was
made and entered into with the understanding and intention on the
part of Bussing of making use of the People's Traction Company
franchise in the event of securing the legislation. It would be strange,
indeed, if any prudent man would invest $500,000, in a franchise un-
less he expected that he or some one else was to make use of such
franchise. It was mutually agreed between them, in effect, that this
franchise, if perfected by the proposed legislation, sanctioned by a de-
cision of the Court of Appeals, was worth $1,100,000; that it was
worth $500,000 when supported by the legislative enactment alone, and
as the entire value of the franchise depended upon its being made use
of within the time which should be prescribed by law, and as Bussing
had agreed to pay $500,000 upon the securing of the legislation, in ad-
dition to the value of the other properties, aggregating a like amount,
Flynn could not anticipate that there would be a failure on the part
of Bussing to make use of the property for which he was willing to
pay so much money. Standing in the position of the parties at the
time this contract was made, no one would have thought of requiring
Bussing to agree to attempt to construct or operate the People's Trac-
tion Company lines. There was no other apparent reason for making
the contract than to vest the property in the hands of Bussing, who
could get nothing out of the property unless it could be made use of
for the purposes of a street surface railroad. There was a $500,000
guaranty that Bussing or his successors would undertake to make use
of this franchise as soon as the necessary legislation was secured, and
both parties mutually promised to aid in the securing of such legisla-
tion, and Flynn's right to the additional $600,000 was made to depend
upon the Court of Appeals approving such legislation. The attempt
to make use of the franchise, modified by legislation, would of neces-

sity force the local authorities, a taxpayer or some one, to contest the right; and it was in contemplation of this situation that the parties contracted. There was a duty on the part of Bussing or his successors to do the things which the contracting parties understood were to be done, in order that Flynn might have the benefit of his contract. The case is thus brought within the rule that, where there is no express agreement which can be enforced, the law will imply one; that is, will impute a promise, or intend that one was made. And such implication will always exist where equity and justice require the party to do the thing in question, even though it expressly appears that he never made the promise or agreement which by such implication the law attributes to him. Scrantom v. Booth, 29 Barb. 171, 175; Booth v. Cleveland Rolling Mills Co., 6 Hun, 591; Wilson v. Mechanical Orguinette Co., 170 N. Y. 542, 63 N. E. 550; Genet v. D. & H. C. Co., 136 N. Y. 593, 32 N. E. 1078, 19 L. R. A. 127. The reasoning in the latter case is peculiarly applicable to the facts in this case, and must be considered as controlling here.

The complaint sets out this contract and alleges a breach on the part of the defendants in failing to take action to construct or operate the railroad contemplated in the People's Traction Company franchise until it was too late to secure the action of the Court of Appeals within the time provided in the contract, and it is likewise alleged that the defendants have failed to act until now the franchise has been forfeited, and the relief demanded is the payment of the $600,000 deferred payment, the same as though the Court of Appeals had actually decided in favor of the validity of the franchise. We are not entirely clear that the plaintiff has set up the proper measure of damages; but upon a demurrer it does not seem necessary to determine this question. If there was an implied promise on the part of Bussing to take steps which would force the testing of the right to construct and operate a railroad under the People's Traction Company franchise —and we think there was—the plaintiff has set forth facts sufficient to show a breach of that contract and a right on his part to damages. Whether he has asked for the proper relief is not very particular, so long as he is entitled to some relief; and it may be left to the court upon the trial to determine questions of this character. The demurrer only goes to the facts pleaded, and we are of the opinion that the facts set forth, and which may be implied, are sufficient to state a cause of action.

The interlocutory judgment appealed from should be affirmed, with costs. All concur.