HARRY A. HANBURY, Respondent, Impleaded with PATRICK H. FLYNN and Others, Plaintiffs, v. METROPOLITAN SECURITIES COMPANY and Another, Appellants.

Second Department, January 22, 1926.

**Motions and orders — jurisdiction — judge holding Trial Term at which he sets aside verdict under Civil Practice Act, § 549, cannot reconsider said order at subsequent term — jurisdiction not conferred by parties appearing and arguing motion — order setting aside dismissal of complaint on ground that plaintiff might have recovered on theory not advanced is erroneous — court did not have power to grant new trial — contracts — action by assignee to recover balance due on contract for sale of paper franchises to construct street surface railroads — assignee did not have title — defendants had right without pleading to take advantage of defect in plaintiff's title first appearing on trial — Statute of Limitations defense against new parties plaintiff brought in as undisclosed principals — alleged franchises sold were non-existent at time of contract — contract was without consideration — defendants not required to test validity of statutes avoiding forfeiture of franchises for failure to commence construction within five years — said statutes had been construed by Court of Appeals as not reviving forfeited franchises — failure to begin useless litigation cannot be made basis of action.**

The judge granting the order appealed from, which purports to set aside a prior order setting aside the verdict in favor of the plaintiff, on motion made under section 549 of the Civil Practice Act, did not have the power to make the order appealed from at a subsequent Trial Term of the court.

Since the court did not have the power at a subsequent Trial Term to make the order appealed from, jurisdiction to make that order could not be conferred by the parties appearing and arguing the motion.

The court did not have the right to set aside a dismissal of the complaint upon the ground that the plaintiff might have recovered on a theory not advanced at the trial.

The court did not have the power to make the order appealed from in so far as it granted a new trial, for the motion was made under section 549 of the Civil Practice Act.

The plaintiff, an alleged assignee of a contract for the sale of paper franchises to construct street railroads in New York city and in Westchester county, which contract was made in 1901, cannot recover, since it appears that the contract in question on which there is an alleged balance due of $600,000 was made by its terms non-assignable and, therefore, the plaintiff could not acquire any rights by assignment.

Furthermore, the administrator of the first assignee who held the contract in trust for another could not assign the contract, and it appeared also that the trustee subsequently assigned the contract to the beneficiary and that no assignment back to the person acting as trustee is shown.

The defendant had the right, without pleading, to take advantage of any obvious defects in plaintiff's title which first appeared on the trial.

15

New parties plaintiff brought in when plaintiff's defect in title was shown, on the theory that said new parties were undisclosed principals, are subject to the defense of the Statute of Limitations.

Furthermore, the plaintiff cannot recover since the contract was without consideration, for it appears that at the time the contract was made the franchises had been forfeited by a failure to commence construction of the railroads within five years, and that the statute purporting to revive the franchises could not have that effect.

The provision in the contract relating to an action to test the validity of the acts of the Legislature as applied to the franchises in question became immaterial by reason of a decision of the Court of Appeals in another case to the effect that the franchises having once been forfeited could not be revived by a subsequent act of the Legislature.

Therefore, the plaintiff cannot recover on the theory that the defendants failed to institute a litigation to test the validity of the acts, for it clearly appears that such a litigation would have been useless.

APPEAL by the defendants, Metropolitan Securities Company and another, from an order of the Supreme Court, made at the Kings Trial Term and entered in the office of the clerk of the county of Kings on the 21st day of May, 1925, granting plaintiff's motion for a new trial and setting aside a previous order entered in said clerk's office on the 18th day of April, 1925, which dismissed the complaint as to the defendant Bussing and granted the motion of the defendant Metropolitan Securities Company made at the close of the trial to set aside the verdict for plaintiff rendered by direction of the court and dismissed the complaint as against said defendant.

*Joseph P. Cotton* [*George H. Savage* and *Livingston Jenks* with him on the brief], for the appellants.

*Frederick W. Sparks* [*Leonard J. Reynolds* with him on the brief], for the respondent.

KELLY, P. J. The order appealed from, while it " sets aside " the former order of the court, does not in terms direct that the verdict be set aside, but it contains a recital that the trial justice has " handed down an opinion holding, among other things, that the ends of justice will best be served by setting aside the direction of the verdict in favor of the plaintiff with exception to plaintiff and reconsidering on this reargument the defendant's motion to dismiss at the close of the entire case and denying the same with exceptions to *defendant* and ordering a new trial." But, as I have suggested, the order appealed from did not in terms set aside the verdict, and so far as defendant Bussing is concerned, in my opinion, the plaintiff during the trial practically conceded that the complaint should be dismissed as to Bussing (see the motion to dismiss as to Bussing and the colloquy thereafter and the

statement of counsel for the plaintiff: " Mr. Sparks: Well, I will waive the question of Bussing "), and I am confirmed in my belief that the court in the order appealed from did not intend to set aside the dismissal of the complaint as to *Bussing*, by the language of the court's recital that the motion to dismiss the complaint is the motion of the Metropolitan Securities Company, and the exception to the ruling is granted " to *defendant*," not to " *defendants*."

In my opinion, the original decision of the court setting aside the verdict and dismissing the complaint was the proper disposition to be made of the case.

Mr. Justice CARSWELL'S power to reconsider in May, 1925, his decision on the motion made at the close of the trial in February, 1925, to set aside the verdict and dismiss the complaint, which motion was granted, is questioned by the appellants. In my opinion, a trial justice having entertained a motion under the Civil Practice Act, section 549, made upon his minutes, at the close of the trial in February, reserving decision, and having subsequently, in April, granted the motion by order duly entered, said trial justice had no power under the guise of reargument, after the expiration of the term at which the case was tried and while he was holding a different Trial Term in May, to set aside and reverse the former decision upon any ground. I think he was *functus officio*. Appellants' point is that the ground upon which the justice granted the new trial is not one of the grounds specified in the Civil Practice Act, section 549, and that a new trial on the grounds moving the learned justice could only be granted by the Special Term under the Civil Practice Act, section 552.

Of course the learned justice was actuated by the best of motives. In his opinion filed on granting the order appealed from he says: " The court endeavored on this trial to have such a record that no matter what view was eventually taken on the law of the case there would be no occasion for a retrial after an appellate review." The opinion handed down in May opens with the statement: " The term during which this case was tried still continues." I think the learned justice was in error. The case was tried in Trial Term, Part III, Kings county, on February 16, 1925. The Appellate Division pursuant to the Judiciary Law had duly appointed that February Trial Term in Part III, and had assigned Mr. Justice CARSWELL to preside in said term. There can be no question as to the power of the justice so presiding at the February term to entertain motions under the Civil Practice Act, section 549, concerning trials before him at such term. There can be no question, it seems to me, as to his right to reserve decision on such motions

and to hand down such decisions and enter orders thereon after the close of the February term. While he had the motion *sub judice* he could hear as many rearguments as he saw fit to grant. When, however, he decided the motion and signed an order on his decision, I think his power and jurisdiction over the case terminated. There was a new Trial Term, Part III, appointed for the first Monday of March, at which Mr. Justice LAZANSKY was appointed to preside, and again there was an April term presided over by Mr. Justice CALLAGHAN, and a May term presided over by Mr. Justice LEWIS. I doubt the power of the learned justice to *continue* the February Trial Term, Part III, and I doubt the correctness of his statement that on May 21, 1925, " The term during which this case was tried still continues." He might " continue " it down to the beginning of the next regularly appointed Trial Term, Part III, but no longer. In the meantime he had been assigned to and actually did preside at Trial Term, Part VIII (the Criminal Term), in March (during which month he handed down his decision on the motion made at the close of the trial in February). He held Special Term, Part I, Kings county, during April, at the time he heard the first so-called second reargument upon which he adhered to his original decision. In May, 1925, he was regularly assigned to and actually presided in Trial Term, Kings county, Part I.

Praiseworthy as were the motives of the learned justice, I think there is serious danger in approving this procedure. I do not think the parties by appearing before a justice in May at a different Trial Term and " rearguing " a motion, could confer jurisdiction upon him. It is a matter in which the court, as a court, has a distinct interest and I think the Judiciary Law should be enforced. To authorize the procedure followed here will only create confusion and possible clashes of authority without any good reason. The February, 1925, term in Part III ended on February 28, 1925. A new term began on March 2, 1925, with a new justice assigned to and who actually presided at such term.

In *Vetter* v. *Asphalt Construction Co.* (209 App. Div. 910), this court decided that a " trial justice having heard and denied the motion made at the term at which the action was tried, and judgment having been entered, was without power to entertain a motion for reargument several months thereafter, and upon such reargument to grant the motion." We cited *Ellis* v. *Hearn* (132 App. Div. 207). The headnote in that case reads: "Where a motion for a new trial upon the judge's minutes made on the grounds stated in section 999 of the Code of Civil Procedure has been denied by the trial court, and the term has expired, the rights of the parties become fixed in the absence of an appeal upon a case made and

settled. The trial judge has no right thereafter to entertain a reargument of the motion.".

Mr. Justice CLARKE said (p. 209): "The rights of the several parties were then fixed. The right of appeal existed. That motion was based upon the record of the case as presented; and if that record disclosed error it was available and a reversal could be obtained by the ordinary method and practice prescribed. If the record did not contain error, there was no ground for granting the motion in the first place, and no ground could thereafter be supplied to justify a reargument."

But in the *Ellis* case, Mr. Justice CLARKE referred to the inherent power of the Supreme Court over its judgments, and cited the case of *Donnelly* v. *McArdle* (14 App. Div. 217), where three years and eight months after the entry of judgment and after two motions had been made and denied for a new trial, the plaintiff, upon a new set of papers, obtained an order to show cause from the trial judge why the case should not be reopened upon the ground of surprise and a new trial had. Mr. Justice CLARKE said: "Mr. Justice O'BRIEN, writing the prevailing opinion upon the appeal to this court, said: 'We all agree that the court had power to grant the motion, and that such power was not dependent upon or limited by the Code, but is inherent in the court. (*Vanderbilt* v. *Schreyer*, 81 N. Y. 646; *Ladd* v. *Stevenson*, 112 id. 325.) In the latter case it was said: "The whole power of the court to relieve from judgments taken through ' mistake, inadvertence, surprise or excusable neglect ' is not limited by section 724, but in the exercise of its control over its judgments it may open them upon the application of any one for sufficient reason in the furtherance of justice. Its power to do so does not depend upon any statute, but is inherent, and it would be quite unfortunate if it did not possess it to the fullest extent." And in speaking of such power, the Court of Appeals in *Vanderbilt* v. *Schreyer* (*supra*) said: "There are so many occasions for its exercise that it should not be curtailed. Whether the power shall be exercised in any case rests in its discretion, with the exercise of which this court will not ordinarily interfere." ' " Mr. Justice CLARKE said in the *Ellis* case that the application for a new trial was really made upon the ground of " surprise; " that a motion upon such ground was provided for in the Code of Civil Procedure, section 998; that it might be made at *Special Term*, and that it was not necessary to make a case. And he pointed out that the motion was heard at the chambers of the trial justice; that the argument was had without any suggestion of irregularity; that while it was not before the regularly appointed *Special Term*, the order setting aside the verdict and granting a new trial was entitled " At a

*Special Term* of the Supreme Court * * * held at Chambers." etc. He held that the question of regularity not having been presented was waived and could not be presented for the first time upon appeal. LAUGHLIN and SCOTT, JJ., concurred; INGRAHAM and HOUGHTON, JJ., dissented. Mr. Justice INGRAHAM said in his dissenting opinion: " The motion made before the learned justice at his chambers was thus a motion to reargue a motion which had been made and decided at the Trial Term, which Trial Term had adjourned." The application was made to him " not as an original motion at Special Term, but as an application made to him to rehear a motion made to and decided by the Trial Term at which he had presided and which had adjourned." Without quoting Mr. Justice INGRAHAM's interesting dissenting opinion at length, he held that the motion had been made to the trial justice on his minutes; that he had exercised his discretion and denied it; that an order had been entered denying it, and that the proper method of reviewing that order was by appeal. He said (p. 216): " While recognizing fully the power of the court over its own decisions, the power to open and vacate judgments and grant to either party the relief to which he is entitled, there must be some finality in the disposition of actions; and when a case has been fairly tried and the questions presented determined by the trial judge and a jury, and judgment has been duly and fairly entered, there must be something more than an error of law by the trial judge to justify him in granting a new trial after the term at which the case was tried had ended, and the action had been finally determined by the entry of final judgment. Whether or not a motion regularly made at Special Term upon the ground of surprise would or would not have been justified in this case is not presented; this was not such a motion. The defendant applied to the court to reargue the motion made on the judge's minutes which had been denied. He applied not to the Special Term, but to the judge who had presided at the Trial Term at which the action was tried; and that judge, not holding a Special Term of the court, but at his chambers, directed a reargument of a motion that had been heard at Trial Term and denied, and granted that motion, a proceeding which I think was entirely unauthorized and which cannot be entertained without a violation of the established practice and the express provisions of the Code."

In the case at bar there is no pretense that the plaintiff is pleading " surprise " as a ground for the alleged " reargument." The notice of motion recites that it is to set aside the previous order " upon the ground that said direction [*i. e.,* the ' judgment or order ' entered on the previous decision] is contrary to the evidence and

contrary to the law." These questions, it may be noted, were the questions which were submitted in February under the Civil Practice Act, section 549, and which had been decided.

The order appealed from was not made at *Special Term;* it is entitled as if made at *Trial Term, Part III,* on May 21, 1925, and signed by a justice who was not holding Part III on that day.

The affidavit of the attorney for the plaintiff, on which this second motion for reargument was based, alleges that he thinks that the evidence shows that defendant Bussing had assigned his rights under the contract in suit to one Bixby (his claim being that, therefore, an agreement made by Flynn with Bussing not to assign the contracts was invalid), and that he had overlooked the fact and failed to call it to the attention of the court.

And this setting aside of the dismissal of the complaint is not granted upon any finding by the learned trial justice that he erred in his decision or rulings. He says of the latest contention of the attorney for the plaintiff: " *It may be that plaintiff's claim  *  *  * is correct.*" This is no ground upon which to set aside a judgment or order of a court of justice. Then the learned justice says: " But if this is so the defendant should not be deprived of the opportunity to meet this theory of the plaintiff. Defendant claims it has proof to meet what is now urged, which it did not adduce *because plaintiff did not try his case on the theory now advanced.*" (Italics mine.) Then he proceeds to say that " the ends of justice will best be served and the work of the courts (appellate and trial), with respect to this controversy kept at a minimum by setting aside the direction of the verdict in favor of the plaintiff and reconsidering on this reargument the defendant's motion to dismiss at the close of the entire case and denying the same and ordering a new trial."

I think the appellants are right in their claim that however laudable the motives of the learned justice may have been he had no power to make the order appealed from.

This question was before the Court of Appeals in 1919 in *Clancy* v. *N. Y., N. H. & H. R. R. Co.* (226 N. Y. 213). Judge HOGAN, writing for the court, recites the proceedings in that action, the finding of a verdict for the plaintiff by direction of the court, a motion by defendant to set aside the verdict and for a new trial granted at the same term on the ground of errors of law, and the entry of an order upon such decision. An order was entered on January 31, 1914, plaintiff appealed but the appeal was never perfected. On June 23, 1914, plaintiff procured an order from the trial justice returnable at " a Special Term for Trials at Poughkeepsie on June 26th, 1914," requiring defendant to show cause

why the order setting aside the verdict and granting a new trial should not be vacated and why the motion should not be reargued, and subsequently the court set aside the first order and denied the motion for a new trial. Plaintiff thereupon entered the judgment. The judgment and order were affirmed without opinion in this court (177 App. Div. 900). The Court of Appeals reversed this court. Judge HOGAN says, referring to the original order setting aside the verdict and granting a new trial: " The result of that order as affecting the substantial rights of the parties is apparent. The defendant against which a verdict for a substantial sum of money was directed was relieved therefrom. The plaintiff was deprived of her verdict and denied the right to enter judgment thereon and a retrial of the action was imposed upon her. The order granted by the trial justice was as effective as would have been a judgment so far as the rights of the parties were concerned. The status of the parties thus remained until the order entered December 27, 1915, which granted a reargument of the motion made at the close of the trial and denied the motion to set aside the verdict and for a new trial. The granting of the last order referred to resulted in the entry of a judgment in favor of the plaintiff against defendant and the substantial rights of the parties were as clearly affected as were the rights of the plaintiff when the verdict in her favor was set aside and a retrial ordered. We think the weight of authority is contrary to the practice adopted in this case. (*Herpe* v. *Herpe*, 225 N. Y. 323; *Bohlen* v. *Metr. E. R. Co.*, 121 N. Y. 546; *Heath* v. *N. Y. B. L. B. Co.*, 146 N. Y. 260; *Heinitz* v. *Darmstadt*, 140 App. Div. 252; *Ellis* v. *Hearn*, 132 App. Div. 207, 209.) "

*Heath* v. *N. Y. Building Loan Banking Co.* (146 N. Y. 260), cited by Judge HOGAN, was an appeal from an order of the General Term of this court which reversed an order of a justice who had presided at the trial resettling his findings of fact and law and modifying a judgment entered thereon. The Court of Appeals in affirming this court said: " It would be a most dangerous precedent if such a wide departure from due and orderly procedure, as is here disclosed, should be permitted." They said the plaintiff had mistaken his remedy in resorting to the trial justice, and they affirmed this court in holding that the Special Term had no power to entertain the motion.

My conclusion upon this branch of the case is that the learned justice at Trial Term had no power to entertain either of the two motions for reargument, the last of which resulted in the order appealed from.

I also agree with the first proposition in the appellants' points,

that the court was without power to grant a new trial upon the grounds stated in his opinion. Section 549 of the Civil Practice Act provides: " The judge, presiding at a trial by a jury, in his discretion, may entertain a motion, made upon his minutes, at the same term, to set aside the verdict or a direction dismissing the complaint and grant a new trial upon exceptions; or because the verdict is for excessive or insufficient damages, or otherwise contrary to the evidence, or contrary to law." And section 552 provides that " In a case not specified in the last three sections [§§ 550 and 551 are not applicable], a motion for a new trial must be heard and decided, in the first instance, at the Special Term."

The original decision of the learned justice on March 25, 1925, setting aside the directed verdict and dismissing the complaint resulting in the order of April 18, 1925, was the proper disposition of this litigation. Not only upon the grounds stated by the learned justice, viz., that plaintiff Hanbury had no right to maintain the action as assignee of Patrick H. Flynn, the original contracting party, but also for the reason that the entire claim is based upon a contract on Flynn's part, variously altered and amended as stated in the complaint, by which Bussing, whose liabilities were assumed by the Metropolitan Securities Company, agreed to pay the large sum of $1,600,000 for paper railroad franchises which were shown on the trial to be worthless.

The record of the pleadings, arguments, proofs and colloquy is bulky and complicated. In the agreements in evidence Mr. Flynn " represents that he and his associates control ' various railroads in the northern part of New York city and in Westchester county,' " and he agrees to turn them over to Bussing, a practicing lawyer in Brooklyn, who was acting for the defendant securities company. None of these " railroads " was ever built or constructed, but Bussing agrees to pay Flynn $1,600,000 " *in cash or securities, or partly in cash and partly in securities, at the election of the party of the second part.*" (Italics mine.) Examining the supplemental agreement dated February 4, 1901, the same day as the original document, Flynn " agrees for himself and his associates " that in consideration of the original agreement they will for ten years have nothing to do with street railroad franchises in the counties of New York or Westchester, and that they will " withdraw all obstacles in the way of, and refrain from interfering with, the extension or construction of any lines of street railroads now or which may hereafter be located in the Counties of New York and Westchester," and that they will procure the discontinuance of certain litigation started against any of the railroads. They agree to " help " the party of the second part.

The learned trial justice said of the case: " It is not a little complicated; it is greatly complicated."

The action was commenced on *February 17, 1906,* by Frank D. Creamer, the original plaintiff. Defendants demurred on *March 16, 1906,* and the demurrer was overruled on *January 10, 1907.* The defendants appealed to this court, which affirmed the judgment in *June, 1907 (Creamer v. Metropolitan Securities Co.,* 120 App. Div. 422). From June 7, *1907,* until *1921, fourteen years,* the case appears to have slumbered. Then Creamer, the original plaintiff, having died, the present plaintiff, Hanbury, was substituted. The case was not brought to trial until February 16, 1925, just *nineteen* years after it was commenced. And when it is considered that the action is to recover damages for breach of a contract made in *1901,* we can see how deliberate these litigants were.

The action is one at law to recover $600,000 for alleged breach of contract. The contracts, set out at length in the complaint, have to do with the sale by Flynn to Bussing of certain alleged railroads and railroad franchises in Bronx and Westchester counties for $1,600,000 in cash and securities, as I have already stated. It is alleged that $1,000,000 was paid to Flynn, leaving a balance of $600,000 due. But this $600,000 was not payable until the validity of certain acts of the Legislature (passage of which Flynn agreed to procure) had been approved by the Court of Appeals, and if there was any doubt about the approval of the Court of Appeals, an agreed statement of facts was to be submitted to the Appellate Division in the Second Department, which apparently was to decide the question in doubt.

The gravamen of the plaintiff's complaint (suing as the alleged assignee or successor of Flynn) is, that there was an obligation on Bussing (or the Metropolitan Securities Company, which assumed his obligations) to institute the litigation to test the validity of the acts of the Legislature referred to, and that one of the first steps necessary in that direction was the beginning of construction of the street railroads in question, whereas plaintiff alleges that Bussing and the Metropolitan Securities Company made no attempt to commence railroad construction, and have suffered the consents and franchises to become forfeited. Therefore, the plaintiff says the defendants owe the $600,000 with interest from February 1, 1904.

A statement of the cause of action set out in the complaint will be found in the opinion of this court at the June, 1907, term (*supra*), affirming the judgment of the Special Term overruling the demurrer to the complaint (120 App. Div. 422). But, of course, the court was simply passing upon the sufficiency of the complaint.

After that decision the defendants answered, and *eighteen years thereafter* the issues presented by the complaint and answer were brought to trial and plaintiff and defendants presented their proofs. On the trial, and indeed in his points on this appeal, the attorney for the plaintiff appears to argue that the decision overruling the demurrer is in some way decisive of the issues or some of them. This is indicated in his point VII and in his point VI, where he says: " The Appellate Division should not assume the burden of passing upon the difficult and intricate questions on the merits discussed in part II of defendants' brief. The merits, not having actually been passed upon by the trial court, should be left to that court in the first instance upon a new trial." He says the trial justice did not " deem it necessary " to pass upon the merits. I do not agree with him as to the action of the trial justice, and I do not agree with him in his statement of the duty of this court on this appeal.

While at the trial the defendants moved to dismiss the complaint and for the direction of a verdict upon many grounds, viz.: (1) That the evidence showed that plaintiff Hanbury's title to the cause of action was defective; (2) that as to additional plaintiffs brought into the case on plaintiff's motion over defendants' exception these alleged claims were barred by the Statute of Limitations; (3) that on the evidence no breach of the agreement is shown, the learned trial justice based his decision setting aside the verdict directed for plaintiff and dismissing the complaint upon the first two grounds stated above (see his original opinion of March 25, 1925). I agree with his conclusions stated in that opinion. Plaintiff Hanbury's rights depended upon an assignment of the contracts from Flynn to Creamer, the original plaintiff, dated March 17, 1902. The learned trial justice held, properly I think, that by the express covenant of Flynn the contracts were non-assignable and that " No rights passed to Creamer under the assignment from Flynn as against Bussing, defendant's assignor. It was a mere attempted assignment of a chose in action which by express agreement of the parties was deprived of the element of assignability."

He then said that even if it were assumed that the assignment from Flynn to Creamer was valid, still on the evidence in the case Creamer's administrator had no right to assign the claims to Hanbury, for the reason that Creamer prior to the assignment had made a declaration that he held the contracts in trust for James Shevlin, which declaration of trust was introduced in evidence. He held that Creamer's administrator did not succeed to such a trusteeship without appointment thereto (citing *Butler* v. *Butler,* 41 App. Div. 477, 480). In addition to the declaration of trust,

the plaintiff during the trial introduced in evidence an *absolute assignment* from Creamer to Shevlin on *March 17, 1902, four years prior to the commencement of the action,* of all his (Creamer's) rights under the contracts mentioned in the complaint in this action. There was no reassignment by Shevlin to Creamer. In 1917, several years after Creamer's death *and eleven years after the commencement of the action,* we find another of the many agreements in the record. This agreement is between Patrick H. Flynn, Fred C. Cocheu; Joseph F. McLean, individually and as administrator of John McCarty, deceased, and as executor of Sarah A. McCarty, deceased; Everett Greene; the executors of the will of John Keenan, deceased; the administrator of the estate of Michael J. Coffey, deceased; P. Frank Keenan; James Shevlin and J. Benedict Roache; reciting that Flynn was the " manager " of an " enterprise " consisting of the promotion and construction of certain street surface railroads " commonly known and called the People's Traction Enterprise " and in which the parties said to be " interested " assume to " ratify, adopt, approve and reaffirm " the assignment made fifteen years before by Flynn to Creamer (deceased). This instrument declares that Flynn, Shevlin, Cocheu, Coffey, McCarty and others were " owners in common of the properties and assets of said enterprise " and proceeds to declare the interests of the various parties in the cause of action in the case at bar, and all the parties agree to " render such assistance as may be necessary or required of them either in or out of court " to help out this action. It must be remembered that the existence of these last two documents was unknown to the defendants until the trial.

The appellants contend that Hanbury, to maintain the action, must show that he had title in 1906 when it was commenced, and that later assignments have no retroactive effect, and the learned trial justice so held.

Plaintiff says defendants urge that Creamer had assigned the cause of action before the commencement of the lawsuit without pleading the fact as an affirmative defense. But the plaintiff alleged an assignment of the contracts to him. Defendant securities company denied this in its answer. *During the trial the plaintiff introduced in evidence the assignments pleaded in the complaint,* and in the course of the trial plaintiff's counsel to cure the defect appearing in Creamer's title, showing that he held the contracts as *trustee* and that an assignment by his administrator was invalid, produced these additional assignments to Shevlin and others from his private files, dated February, 1918. It would seem that *defendants* should be able to take advantage of these obvious defects in plain-

tiff's title first appearing in plaintiff's proof under the denials in its answer. The learned trial justice so held, and I think he was right.

Again at the end of the case, when the defects in plaintiff Hanbury's title were obvious, the plaintiff moved to bring in Shevlin's executors, McCarty's administrators, Coffey's administrators and others as plaintiffs, on some theory that they were " undisclosed principals." When the motion was made at the trial in 1925, defendants' counsel said: " I don't know any of these people at all. If they have any rights at all, they have had them since 1902 and they haven't asserted them before." Defendants' counsel objected, but the trial court granted the motion over defendants' objection, defendants noted an exception. Defendants insisted that the Statute of Limitations had run against them. The court let them in, but in his opinion setting aside the verdict and dismissing the complaint he held that as to all these people their action was barred by the Statute of Limitations. Again I think he was right. A delay of twenty-three years in asserting alleged rights is not only a violation of the statute, but casts a serious doubt over the existence of the claims at all.

Of course the learned justice let in all these new plaintiffs with the laudable desire of cleaning up the litigation begun in 1906 and brought to trial in 1925. But there is another, and I think an unsurmountable reason why the dismissal of the complaint should stand. The defendants, appellants, contend that the record shows no liability on the part of defendants, for the reason that prior to the making of the contracts sued upon, the alleged rights and franchises of the People's Traction Company, which were the subject-matter of the agreements, were non-existent, they had been forfeited, and were not and could not be revived by legislation.

The whole basis of plaintiff's action is that Bussing or the Metropolitan Securities Company defaulted in performance of their part of the contract, because they omitted to procure a determination by the Court of Appeals or a subsequent confirmatory determination by this court, as to the validity of the legislation which was to be procured by Flynn, validating the franchises and authorizing a reduction in the amount bid for the franchises at the sale thereof by the city comptroller, 100 per cent of the gross receipts.

Plaintiff complains that defendants never went on to test the validity of the statutes referred to in the complaint. This is the gravamen of the action. Mr. Justice WOODWARD says in the opinion sustaining the complaint (*supra*, 429) that the alleged breach of contract was in defendants' failing to take action by construction or operation until it was too late to take the court action referred

to in the agreement, so that plaintiff claims he was entitled to the balance of $600,000 held to await the result of such litigation. Attempted construction or operation was considered the opening formality in the proposed attempt to have the courts pass upon the validity of the legislation patching up the franchise which Mr. Flynn is said to have delivered.

The contracts sued on were made in 1901 and January, 1902. The People's Traction Company, a street surface railroad corporation, was incorporated January 30, 1895. At that time, and until amended in April, 1901, section 5 of the Railroad Law (now section 12) provided: "When corporate powers to cease. If any domestic railroad corporation shall not, within five years after its certificate of incorporation is filed, begin the construction of its road  *  *  * its corporate existence and powers shall cease."

This section 5 is self-executing and requires no judicial or other procedure to declare or complete a forfeiture of the corporate existence and powers. (*Matter of B. W. & N. Railway Co.*, 72 N. Y. 245; *Matter of Brooklyn, Winfield, etc., R. R. Co.*, 75 id. 335; *Brooklyn Steam Transit Co.* v. *City of Brooklyn*, 78 id. 524; *Matter of Brooklyn, Q. C. & S. R. R. Co.*, 185 id. 171.)

Section 5 of the Railroad Law applies to a street surface railroad corporation such as People's Traction Company. (*Matter of Brooklyn, Q. C. & S. R. R. Co.*, supra.)

It is admitted that the construction of the road of the People's Traction Company was never begun.

The language of the contracts themselves shows that the failure to begin construction, and the failure to give the bond required on purchase of the franchise seriously affected the validity of the corporate rights and franchises which were the subject of the agreement. This court said through Mr. Justice WOODWARD in construing the complaint (*supra*), " the $600,000 additional was to be paid if the Court of Appeals, within a period of five years from the date of the contract, sustained the legislation necessary to give value to the franchise." The proposed legislation was enacted in 1901. Plaintiff's witness Cocheu identifies the legislation as " amendments to the Railroad Law," section 93 and section 5. (Laws of 1901, chaps. 494, 508.)

But in July, *1904*, the Special Term of the Supreme Court in Kings county held that failure to exercise corporate street railroad franchises within five years rendered the franchises *void* and that the forfeiture could not be avoided by legislation. (*Matter of Brooklyn, Q. C. & S. R. R. Co.*, citing *Brooklyn & R. B. R. R. Co.* v. *L. I. R. R. Co.*, 72 App. Div. 496; appeal dismissed, 178 N. Y. 593.) This decision was unanimously affirmed by this court in June, *1905*

(106 App. Div. 240, opinion by WILLARD BARTLETT, J.), and this court expressly held that the legislation purporting to extend the time of street surface railroads " can hardly have been designed to revive franchises already dead by reason of the operation of a self-executing general statute." And when the case reached the Court of Appeals in May, 1906 (185 N. Y. 171), that court, through HISCOCK, J., affirmed the decisions of the Special Term and Appellate Division, and •held that the two statutes of 1901 had no application to a street surface railroad which had absolutely forfeited and lost its franchise to construct its railroad for failure to comply with the requirements of section 5 of the · Railroad Law.

The appellants argue, and it seems to me the argument is unanswerable: " The decision in the *Littleton* case [referring to *Matter of Brooklyn, Q. C. & S. R. R. Co., supra*] was, therefore, a decision by the courts, including the Court of Appeals, within the contract period. This decision was just as effective upon the question here involved as if a case expressly involving People's Traction Company had gone to the courts. It was sufficient under the provisions of the contracts that the legal questions be decided by the Court of Appeals, and there was no contract requirement that People's Traction Company be a party to the action in which they were decided. The contracts provided that any doubt as to the effectiveness of a decision by the Court of Appeals could be resolved by stating a case to the Appellate Division. No attempt was made by Flynn to take advantage of this provision in the contract. If he had had any doubt as to effect of the *Littleton* decision, the contract provided his remedy. The decision of the Court of Appeals in the *Littleton* case was pleaded by defendant as an affirmative defense and proved as a fact at the trial."

In my opinion the alleged failure of Bussing and the Metropolitan Securities Company to begin a useless litigation cannot be made the basis of an award of damages in this case.

The order appealed from, entered May 21, 1925, which order grants plaintiff's motion to set aside a former order entered in this action on April 18, 1925, setting aside a directed verdict in favor of plaintiff and dismissing the complaint herein, with costs to defendants, should be reversed upon the law, and plaintiff's motion to set aside said order of April 18, 1925, denied, with costs to defendants, appellants.

RICH, JAYCOX, MANNING and YOUNG, JJ., concur.

Order appealed from, entered May 21, 1925, which order grants plaintiff's motion to set aside a former order entered on April 18,

1925, setting aside a directed verdict in favor of plaintiff and dismissing the complaint herein, with costs to defendants, reversed upon the law, and plaintiff's motion to set aside said order of April 18, 1925, denied, with costs to defendants, appellants. Settle order order on notice.